THE NORTH CAROLINA STATE BAR v. ROBERT M. TALFORD, ATTORNEY

No. 24PA02

(Filed 28 February 2003)

### 1. Attorneys— discipline—appellate review

Appellate courts are not precluded from vacating or modifying a State Bar Disciplinary Hearing Commission sanction. A sanction will not be disturbed when it is the product of justified means, but the Supreme Court is obligated to modify or remand any judgment or discipline shown to be improperly imposed.

### 2. Administrative Law— whole record test—necessary steps

Under the whole record test, the steps necessary to deciding whether the lower body's decision has a rational basis in the evidence are whether there is adequate evidence to support the findings, whether the findings support the conclusions, and whether the findings and conclusions adequately support the ultimate decision. The test must be applied separately to ajudicatory phases and dispositional phases.

### 3. Administrative Law— appellate review—remedies

The Supreme Court has a broad array of remedies from which to chose in the wake of its whole record assessment of a lower body's decision.

### 4. Attorneys— discipline—escalating remedies—findings— suspension or disbarment—requirements

The statutory scheme for disciplining attorneys shows an intent to punish attorneys in an escalating fashion, with each level requiring particular circumstances for imposition, and the Disciplinary Hearing Commission must make written findings which satisfy the mandates of the whole record test and which are consistent with the statutory scheme. Suspension and disbarment require clear showings of how the attorney's actions resulted in actual or potential significant harm and of why suspension and disbarment are the only sanctions that can adequately protect the public from future transgressions by the attorney in question. N.C.G.S. § 84-28.

N.C. STATE BAR v. TALFORD

[356 N.C. 626 (2003)]

**5. Attorneys— discipline—appellate review—whole record test—properly applied**

The Court of Appeals properly applied the whole record test in considering the Disciplinary Hearing Commission's conclusion that an attorney had committed misconduct where the Court of Appeals answered in the affirmative all of the questions inherent in the whole record test.

**6. Attorney— disbarment—insufficient basis**

There was an inadequate rational basis in the evidence to support the Disciplinary Hearing Commission's decision to disbar an attorney for trust account practices and for failing to acknowledge wrongdoing where all clients received the funds to which they were entitled and neither clients nor creditors had complained. None of the DHC's discipline-related findings even address, much less explain, why disbarment is an appropriate sanction under the circumstances, and, on these facts, the parameters of N.C.G.S. § 84-28(c)(3)-(5) precluded imposition of any sanction that requires a showing of risk of significant potential harm to clients.

Justice BRADY did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 147 N.C. App. 581, 556 S.E.2d 344 (2001), affirming in part and reversing and remanding in part an order entered by the Disciplinary Hearing Commission of the North Carolina State Bar on 14 March 2000. Heard in the Supreme Court 10 September 2002.

*Carolin Bakewell for plaintiff-appellant.*

*Irving Joyner for defendant-appellee.*

*Roy Cooper, Attorney General, by Thomas R. Miller, Special Deputy Attorney General, on behalf of the North Carolina Real Estate Commission; and the North Carolina Real Estate Commission, by Blackwell M. Brogden, Jr., Chief Deputy Legal Counsel, and Pamela V. Millward, amicus curiae.*

ORR, Justice.

This appeal arises out of a unanimous Court of Appeals decision that reversed a State Bar Disciplinary Hearing Commission (DHC) disbarment judgment against defendant, Robert M. Talford, a licensed attorney in North Carolina. The issues in the case, as submitted by the DHC, can be summarized as follows: (1) whether the Court of Appeals overstepped its designated appellate authority by reversing the DHC's decision to disbar defendant from practice, and (2) whether the Court of Appeals erred by deciding that the DHC's findings of fact failed to support its ultimate conclusion that defendant's misconduct warranted disbarment. For the reasons discussed below, we hold that the Court of Appeals acted within its scope of authority on both accounts. As a result, the Court of Appeals decision is affirmed.

Defendant was licensed by the North Carolina State Bar in 1976 and practiced law for twenty years in the Charlotte area, concentrating on civil litigation. He ran all facets of his practice himself, and kept no permanent employees. Defendant had maintained a trust account on behalf of his clients since 1978. In 1998, an audit of the account by the State Bar uncovered discrepancies in defendant's bookkeeping methods and practices. The results of the audit prompted the State Bar to file a misconduct complaint against defendant. On 25 February 2000, the DHC held a hearing to determine if defendant's alleged misconduct warranted disciplinary action.

At the hearing, a State Bar investigator testified in relation to defendant's bookkeeping practices for twelve clients. His testimony established that defendant had failed to keep a financial ledger and had not reconciled his trust account on a quarterly basis. Under the State Bar's rules governing attorney conduct, maintaining a written account of income and expenses and timely trust account reconciliations are among the duties required of all legal practitioners in the state. *See* Rev. R. Prof. Conduct N.C. St. B. 1.15-2, 2003 Ann. R. N.C. 642.

For his part, defendant admitted that he had not met his account reconciliation requirements and acknowledged that he failed to keep a written ledger of his income and expenses. However, he claimed that such actions were unnecessary, as he had maintained throughout the period a "visual reconciliation" of the client funds in question. Defendant also insisted that, without exception, all clients at issue had been paid what was due them. We note that neither side pre-

N.C. STATE BAR v. TALFORD

[356 N.C. 626 (2003)]

sented any evidence contradicting defendant's testimony about money disbursements to his clients. Nothing in the record indicates that any client or creditor had complained to the State Bar about defendant, or that any clients had failed to receive funds to which they were entitled.

In its order of 14 March 2000, the DHC made numerous and extensive findings of fact regarding defendant's representation of the twelve clients. The findings were similar for each client, and included circumstantial references indicating that defendant on several occasions: (1) had failed to deposit settlement checks, (2) had written checks for fees in excess of an amount that could be justified by written record, and (3) had written checks attributable to expenses for a case before depositing a settlement check in the case. The findings also showed that defendant could not identify the source of at least part of his trust account aggregate (approximately $37,000 in 1994) and that he had been dilatory in paying some of his clients' medical providers.

As a consequence of its findings, the DHC initially concluded that defendant: (1) had been grossly negligent in the management of his trust account, and (2) had benefitted from his own gross negligence. The DHC next concluded that the aggravating factors of defendant's actions (his pattern of misconduct, his refusal to acknowledge the wrongfulness of his accounting practices, etc.) outweighed the sole mitigating factor (no previous disciplinary record) and ordered him disbarred.

Upon defendant's appeal, made pursuant to N.C.G.S. § 84-28(h), the Court of Appeals reversed the portion of the DHC order that pertained to defendant's disbarment. This Court subsequently allowed the DHC's petition seeking review of the Court of Appeals' decision.

I.

[1] The DHC first contends that the Court of Appeals erred when it reviewed and vacated the portion of the DHC order that imposed the sanction of disbarment on defendant. In the DHC's view, the holdings of *N.C. State Bar v. DuMont*, 304 N.C. 627, 286 S.E.2d 89 (1982) (*DuMont II*), and its progeny have firmly established an unyielding principle that appellate courts have no authority to modify or change penalties ordered by the State Bar's disciplinary commission. We disagree.

The State Bar's power to oversee and police the actions of its membership stems from a legislative grant of authority as expressed in chapter 84, article 4 of our state's General Statutes. Within the confines of article 4, the General Assembly established specific rules outlining the scope of the State Bar's authority to discipline members of its ranks. *See* N.C.G.S. § 84-28 (2001). In addition to delineating the types of attorney misconduct that may warrant disciplinary action, *see* N.C.G.S. § 84-28(b) (subsection (b)), and the extent of sanctions that may be imposed, *see* N.C.G.S. § 84-28(c) (subsection (c)), the statute specifically provides an offending attorney "an appeal of right from any final order imposing [punishment]," N.C.G.S. § 84-28(h) (subsection (h)). Thus, defendant in the instant case, who was adjudged by the DHC to have committed misconduct under subsection(b), and who was sanctioned by the DHC with disbarment under subsection(c), is definitively among those attorneys guaranteed an appeal under subsection (h).

However, the DHC does not necessarily dispute defendant's right to appeal the disbarment order. Instead, it takes issue with the Court of Appeals' conclusion that "the imposition of disbarment was, on the facts of this case, an abuse of discretion." *N.C. State Bar v. Talford*, 147 N.C. App. 581, 595-96, 556 S.E.2d 344, 354 (2001). The DHC supports its position by contending that this Court's decision in *DuMont II* precludes an appellate court from either vacating or modifying a DHC-imposed sanction. In our view, the DHC not only misinterprets *DuMont II*, it ignores the plain language of the appeals provision of the disciplinary statute at issue. *See* N.C.G.S. § 84-28(h) (expressly providing an appeal of right from any order imposing sanctions). Moreover, the DHC's contention—that its sanctioning judgments are beyond reproach—seems to defy the well-established principles of appellate review. After all, if a sanctioned attorney cannot seek judicial review of the penalty imposed upon him, what would substitute as the aim of his appeal? The suggestion that this Court may somehow be positioned to recognize legal errors without benefit of recourse to correct them is, put plainly, an aberrant proposition that is unsupported by case law.

Ostensibly, the DHC premises its view on this Court's holding in *DuMont II*, a case involving Harry DuMont, an Asheville attorney who was sanctioned by the DHC for procuring the false testimony of a witness. In *DuMont II*, this Court reviewed a Court of Appeals decision as to whether an appellate court had the authority to change or modify a DHC-imposed sanction on an attorney. *DuMont II*, 304 N.C.

at 632, 286 S.E.2d at 92, *modifying and aff'g,* 52 N.C. App. 1, 277 S.E.2d 827 (1981) *(DuMont I)*. In *DuMont I*, when considering arguments aimed at vacating a DHC-imposed sanction in favor of another, the Court of Appeals held that it could "not find authority for this Court to modify or change the discipline ordered by the [DHC]." *DuMont I*, 52 N.C. App. at 25-26, 277 S.E.2d at 841-42. Upon subsequent review, this Court concluded: "We agree with the reasoning of the Court of Appeals and adopt its discussion of this issue . . . as our own." *DuMont II*, 304 N.C. at 632, 286 S.E.2d at 92.

Although the building blocks of the DHC's argument may seemingly indicate that this Court has adopted an uncompromising view recognizing the sanctity of DHC-imposed sanctions, a careful reading of the two cases reveals a far more limited perspective. In the sentence immediately preceding the one quoted from *DuMont I*, this Court, in *DuMont II*, made a subtle but significant addition to the holding of the lower court, rephrasing it to read as follows: "G.S. 84-28(h) does not give a reviewing court the authority to modify or change the discipline *properly* imposed by the Commission." *DuMont II*, 304 N.C. at 632, 286 S.E.2d at 92 (emphasis added) (recasting conclusion of the Court of Appeals to include the modifier "properly"). Thus, when a sanction imposed is the end product of a justified means—which, in cases of disciplinary actions against attorneys, is a means that comports with due process mandates and statutory guidelines that expressly include a right of appeal, *see generally id.; DuMont I*, 52 N.C. App. 1, 277 S.E.2d 827; N.C.G.S. § 84-28—this Court has stated that it will not disturb the result. *DuMont II*, 304 N.C. at 632, 286 S.E.2d at 92. However, as illustrated above, *this* Court has not held, and in fact cannot so hold, that it will defer to judgments of administrative bodies that are shown on appeal of right to be premised on grounds that do not comply with the aforementioned statutory requirements. In other words, as this Court is free to review all such judgments as needed, it is equally obligated to modify or remand any judgment (or discipline) shown to be *improperly* imposed. As a consequence, we reject the DHC's general contention that its sanctions are beyond the purview of the state's appellate courts, and we disavow any cases that might be construed in a fashion that suggests otherwise. *See, e.g., N.C. State Bar v. Whitted*, 82 N.C. App. 531, 347 S.E.2d 60 (1986), *aff'd per curiam*, 319 N.C. 398, 354 S.E.2d 501 (1987); *N.C. State Bar v. Wilson*, 74 N.C. App. 777, 330 S.E.2d 280 (1985).

**N.C. STATE BAR v. TALFORD**

[356 N.C. 626 (2003)]

## II.

## A.

**[2]** We next turn to DHC's other contentions, which focus on the type and scope of review conducted by the Court of Appeals. Although the DHC breaks down its arguments into individual segments, our discussion will address DHC's multiple concerns under the umbrella of a single issue: whether the Court of Appeals exceeded the bounds of proper review when it held that the DHC's ultimate conclusion of law (sanctioning defendant with disbarment) was not adequately supported by its findings of facts and preliminary conclusions of law. While we ultimately agree with the Court of Appeals' holding on this issue, we do so for other reasons, which are detailed below. As a result, we affirm the decision of the Court of Appeals as modified.

The same statute that authorizes the DHC to investigate and sanction attorney misconduct also guarantees punished defendants a right of appeal. N.C.G.S. § 28-24(b), (c), (h). Such appeals are conducted under the "whole record test," *DuMont II*, 304 N.C. at 643, 286 S.E.2d at 98-99 (establishing standard), which requires the reviewing court to determine if the DHC's findings of fact are supported by substantial evidence in view of the whole record, and whether such findings of fact support its conclusions of law, *id.* Such supporting evidence is substantial if a reasonable person might accept it as adequate backing for a conclusion. *Id.* The whole-record test also mandates that the reviewing court must take into account any contradictory evidence or evidence from which conflicting inferences may be drawn. *Id.* Moreover, in order to satisfy the evidentiary requirements of the whole-record test in an attorney disciplinary action, the evidence used by the DHC to support its findings and conclusions must rise to the standard of "clear[, cogent,] and convincing." *In re Suspension of Palmer*, 296 N.C. 638, 648, 252 S.E.2d 784, 790 (1979).[1] Ultimately, the reviewing court must apply all the aforementioned factors in order to determine whether the decision of the lower body, e.g., the DHC, "has a rational basis in the evidence."[2] *In re Rogers*,

---

1. The holding in *Palmer* established the evidentiary standard as "clear and convincing." In the following year, the State Bar modified its rules to comport with the holding, implementing the "clear, cogent, and convincing" evidentiary standard for its disciplinary proceedings. That same standard remains in effect today. 27 NCAC 1B .0114(u) (June 2002).

2. The whole-record test is similarly applied when a reviewing court examines whether the decision of a lower body is arbitrary and capricious. *See, e.g., CG&T Corp. v. Board of Adjust. of City of Wilmington*, 105 N.C. App. 32, 40, 411 S.E.2d 655, 660 (1992).

297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979); *see also General Motors Corp. v. Kinlaw*, 78 N.C. App. 521, 523, 338 S.E.2d 114, 117 (1985).

In deciding whether a lower body's decision has a rational basis in the evidence, this Court has approached the question in a variety of ways over the years. In some cases, the Court has considered whether the underlying factual circumstances of a case constituted enough evidence to support a lower body's disciplinary action. For example, in *Thompson v. Wake Cty. Bd. of Educ.*, 292 N.C. 406, 233 S.E.2d 538 (1977), a case involving a teacher who was dismissed from his position for neglect of duty, this Court's review transcended the school board's expressed findings of fact to consider whether the underlying evidence offered at a hearing provided ample justification for the board's ultimate decision to terminate the teacher. In sum, the Court concluded that the testimony and other evidence presented at the hearing provided inadequate support for the board's order of termination.

A second group of cases reveals a more attenuated approach to the whole-record test, conducted under the guise of assessing whether the underlying evidence supports a finding of fact embodied within a lower body's order. For example, in *In re Moore*, 301 N.C. 634, 272 S.E.2d 826 (1981), a case involving a bar applicant who was denied a law license for failing to demonstrate sound moral character, this Court reviewed the record in an attempt to determine if there was adequate evidence to support the Board of Law Examiners' expressed finding that the applicant had committed acts that called his moral character into question. The Court ultimately concluded that the board's findings of fact were not adequately supported by the underlying evidence, and remanded the case for reconsideration.

In a third group of cases utilizing the whole-record test, this Court has reviewed the record in an effort to determine whether a lower body's findings of fact are adequate to support its conclusions of law. For example, in *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 292 N.C. 70, 231 S.E.2d 882 (1977), a case involving an insurance rate revision proposal, the Court concluded that the expressed findings of fact within the commissioner's order failed to support the commissioner's subsequent conclusions of law. As a result, the Court invalidated the commissioner's order.

In yet another group of cases reviewed in light of the whole record test, this Court combined elements of some or all of the three aforementioned approaches. For example, in *Rogers*, 297 N.C.

at 65-68, 253 S.E.2d at 922-24, a case involving another Bar applicant who was denied a law license on grounds of unfitness, this Court first determined that there was insufficient evidence supporting the Board of Law Examiners' expressed finding that the applicant committed the acts in question. The Court then concluded that the board's expressed findings of fact failed to support its ultimate conclusion of law: that the applicant was unfit to practice law in the state. *Id.* at 68, 253 S.E.2d at 924. This Court also utilized a similar approach—Do an order's findings of fact adequately support its conclusions of law?—as part of its analysis of *N.C. Fire Ins. Rating Bureau*, 292 N.C. at 81-84, 231 S.E.2d at 889-91.

From this group of cases reviewed under the whole-record test, we can glean that the following steps are necessary as a means to decide if a lower body's decision has a "rational basis in the evidence": (1) Is there adequate evidence to support the order's expressed finding(s) of fact? (2) Do the order's expressed finding(s) of fact adequately support the order's subsequent conclusion(s) of law? and (3) Do the expressed findings and/or conclusions adequately support the lower body's ultimate decision? We note, too, that in cases such as the one at issue, e.g., those involving an "adjudicatory phase" (Did the defendant commit the offense or misconduct?), and a "dispositional phase" (What is the appropriate sanction for committing the offense or misconduct?), the whole-record test must be applied separately to each of the two phases.

[3] As for the scope of our review, past cases demonstrate that this Court has a broad array of remedy options from which to choose in the wake of our assessment of a lower body's decision, its conclusions of law, its findings of fact, and any underlying evidence supporting those findings. For example, in *Moore*, this Court held that there was inadequate evidence supporting the Board of Law Examiners' expressed findings of fact. As a consequence, the Court remanded the case to the lower body, for further considerations. 301 N.C. at 647, 272 S.E.2d at 834. Significantly, the Court's holding did not limit the board's discretionary power to reimpose its original sanction. Thus, if, upon reconsideration, the board presented ample evidence to support its findings of fact and conclusions of law, and those findings and conclusions adequately supported its decision to reimpose the original sanction, the board would be free to do so. However, this Court has also expressly limited the sanction options available to a lower body upon its remand of a case for reconsideration. For example, in *Rogers*, the Court initially concluded that the

underlying evidence did not support the expressed findings of fact included in the Board of Law Examiners' order. Then, upon further assessment of the underlying evidence, the Court determined that the factual circumstances could not serve as adequate support for either the board's conclusions of law or its ultimate decision. As a consequence, the Court remanded the case to the board for further considerations not inconsistent with the Court's opinion. 297 N.C. at 65-68, 253 S.E.2d at 922-24. Thus, while the board was free to reconsider its position upon remand, it was precluded, as a matter of law, from reimposing its original judgment, which, when reviewed by this Court under the whole-record test, had been deemed definitively as a decision that lacked a rational basis in the evidence.

## B.

[4] The question now before this Court is whether the disbarment sanction imposed by the DHC against defendant can survive appellate scrutiny under the whole-record test. We begin our analysis of the issue by noting the following pertinent facts: (1) defendant was investigated by the DHC for allegedly mismanaging his client trust accounts; (2) the DHC, after conducting a hearing, found that the evidence presented showed that defendant had indeed mismanaged those accounts by "fail[ing] to maintain proper trust records," "fail[ing] to preserve funds in a fiduciary capacity," failing to make timely deposits and dispersals of client funds, and "commingl[ing] client and personal funds"; and (3) there was no evidence presented that demonstrated or even intimated that any client or creditor of defendant had suffered economic losses as a consequence of defendant's recalcitrant bookkeeping practices. From these facts, the DHC concluded that defendant's "acts and omissions . . . were grossly negligent and committed in reckless disregard of his obligations under the [Rules of Professional Conduct]," a wrongdoing that qualifies as grounds for discipline under N.C.G.S. § 84-28(b)(2). The DHC then concluded—under the guise of its "Findings of Fact Regarding Discipline"—that the aggravating factors surrounding defendant's actions (his pattern of misconduct, his refusal to acknowledge his wrongdoing, and his apparent indifference to make any restitution) outweighed any mitigating factors in evidence (namely, defendant's clean disciplinary record). As a result, ostensibly by virtue of the powers granted the commission under N.C.G.S. § 84-28(c), the DHC ordered defendant disbarred.

The statutory scheme for disciplining attorneys is set out in N.C.G.S. § 84-28. Subsection (b) begins by defining the three types of

"acts or omissions by a member of the North Carolina State Bar . . . [that] constitute misconduct and *shall* be grounds for discipline." N.C.G.S. § 84-28(b) (emphasis added). Thus, the DHC's initial task is to determine whether an attorney's acts (or omissions) qualify as misconduct as defined by the statute. Such acts so qualify if they meet the criteria of one or more of three specific provisions set forth in the subsection—(b)(1) (conviction of, or a tender and acceptance of a plea of guilty or no contest to, a criminal offense showing professional unfitness), (b)(2) (a violation of the Rules of Professional Conduct in effect at the time of the act), and/or (b)(3) (knowing misrepresentation of any facts or circumstances surrounding any complaint, allegation, or charge of misconduct; failure to answer any formal inquiry or complaint issued by or in the name of the North Carolina State Bar in any disciplinary matter; or contempt of any council or committee of the North Carolina State Bar).[3] N.C.G.S. § 84-28(b).

Upon initially concluding that a person covered by the statute has committed misconduct (the adjudicatory phase), the DHC then must turn to subsection (c) in order to determine the appropriate sanction (the dispositional phase). Subsection (c) delineates a five-tiered descending scale of punishments, and includes a description of the attending circumstances attached to each one. Taken in reverse order of severity, we set forth the pertinent parameters of all five sanctions that may be imposed under the statute:

Subsection (c)(5), "Admonition," is the least serious punishment and results in "a written form of discipline imposed in cases in which an attorney has committed a minor violation of the Rules of Professional Conduct." Thus, the parameter of conduct that merits this discipline is a "minor violation of the Rules."

Subsection (c)(4), "Reprimand," is the next level of punishment, and it constitutes "a written form of discipline more serious than an admonition" and is "issued in cases in which an attorney has violated one or more provisions of the Rules of Professional Conduct, but the protection of the public does not require a censure." The subsection also describes generally the type of conduct reserved for reprimands. In such cases, the "attorney's conduct has caused harm or potential

---

3. The DHC concluded that defendant had violated the provisions of subsection (b)(2). Subsection (b) defines such a violation as "misconduct," and subsection (c) provides that any such misconduct "shall be grounds for" one of the five sanctions listed in the statute. N.C.G.S. § 84-28 (b), (c).

harm to a client, the administration of justice, the profession, or members of the public." Thus, in order to impose this sanction, the DHC must find harm or potential harm to the entities specified by virtue of the offending attorney's violation of the rules.

Subsection (c)(3), "Censure," is a "written form of discipline' more serious than a reprimand" and is "issued in cases in which an attorney has violated one or more provisions of the Rules of Professional Conduct and has caused significant harm or potential significant harm to a client, the administration of justice, the profession or members of the public, but the protection of the public does not require suspension of the attorney's license." This sanction is distinguished from a reprimand by virtue of a required showing that the misconduct either caused or threatened *significant* harm to the specified entities.

Subsection (c)(2), "Suspension [of an attorney's license]," is also a form of punishment imposed for misconduct that either results in or threatens *significant* harm to "a client, the administration of justice, the profession or members of the public." See N.C.G.S. § 84-28(c)(3) (under sanction of "censure," the factor of a need to protect the public is extended to subsection (c)(2), "[s]uspension"). Thus, when imposed, findings must be made explaining how the misconduct caused significant harm or threatened significant harm, and why the suspension of the offending attorney's license is necessary in order to protect the public.

Subsection (c)(1), "Disbarment," is the ultimate sanction that is reserved for cases in which an attorney's misconduct constitutes a threat so serious that the protection of the public demands that the offending attorney's license and practice be taken away.

Subsections (c)(2), "Suspension [of an attorney's license]," and (c)(1), "Disbarment," do not contain specific parameters under their respective headings. As a result, the DHC argues that those factors that are included in subsection (c) apply, if at all, only to the specific subsections in which they appear—namely, admonition, reprimand, and censure. In addition, because suspension and disbarment are without such expressed factors, the DHC contends that it is free to exercise its broad discretion to impose such sanctions without the benefit of further explanation. We disagree. In our view, the statutory scheme set out in N.C.G.S. § 84-28 clearly evidences an intent to punish attorneys in an escalating fashion keyed to: (1) the harm or potential harm created by the attorney's misconduct, *and* (2) a

demonstrable need to protect the public. Thus, we conclude that in order to merit the imposition of "suspension" or "disbarment," there must be a clear showing of how the attorney's actions resulted in significant harm or potential significant harm to the entities listed in the statute, *and* there must be a clear showing of why "suspension" and "disbarment" are the only sanction options that can adequately serve to protect the public from future transgressions by the attorney in question.

In sum, then, it is clear to this Court that each level of punishment in the escalating statutory scheme: (1) requires its own particular set of factual circumstances in order to be imposed, and (2) is measured in light of how it will effectively provide protection for the public. Thus, upon imposing a given sanction against an offending attorney, the DHC must provide support for its decision by including adequate and specific findings that address these two key statutory considerations. Certainly, there is a range of factual circumstances that the DHC may categorize as being within the parameters of any one level of punishment. However, the DHC's discretionary powers to fit a set of facts within a punishment level are not unbridled. At a minimum, the DHC must support its punishment choice with written findings that: (1) are consistent with the statutory scheme of N.C.G.S. § 84-28; and (2) satisfy the mandates of the whole-record test, as outlined in part II(A), *supra*.

## C.

[5] In applying the whole-record test to the instant case, we note from the outset that neither party takes issue with the portion of the DHC order addressing the "adjudicatory phase" of the hearing. In its order, the DHC expressly concluded that defendant had violated the provisions of subsection (b)(2). Such a violation, under the expressed mandates of the subsection, "constitute[s] misconduct" and is, therefore, "grounds for discipline" as provided for in subsection (c). In its review of the DHC's order, the Court of Appeals held that there was a rational basis in the evidence supporting the DHC's decision that defendant had violated the Rules of Professional Conduct by commingling his personal funds with those of his clients. The Court of Appeals reached its conclusion by answering in the affirmative all three questions inherent to the whole-record test: (1) Did the underlying evidence support the DHC's findings of fact? (2) Did those findings of fact support the DHC's preliminary conclusions of law? and (3) Did those findings and preliminary conclusions adequately support its ultimate conclusion/decision (that defendant had

indeed commingled his funds with those of his clients)? Thus, the Court of Appeals' application of the whole-record test provided ample support for the DHC's decision pertaining to the "adjudicatory phase" of the order—namely, that defendant had indeed committed misconduct by violating N.C.G.S. § 84-28(b)(2).

[6] With the "adjudicatory phase" issue settled, we proceed to assess the "dispositional phase" of the DHC order. The question before us, then, is whether there was a rational basis in the evidence supporting the DHC's decision to impose on defendant the sanction of disbarment. In order to answer this question, we again turn to the whole-record test to determine if: (1) the underlying evidence adequately supports the DHC's findings of fact (concerning its choice of discipline), (2) the DHC's findings of fact adequately support its preliminary conclusions of law (concerning its choice of discipline), and (3) the DHC's findings of fact and preliminary conclusions adequately support its decision (to disbar defendant).

We begin our examination of the issue by noting that the DHC's findings of fact concerning discipline are limited to six conclusory statements about the aggravating and mitigating factors surrounding defendant's misconduct. None of its discipline-related findings of fact even address, much less explain, why disbarment is an appropriate sanction under the circumstances. See N.C.G.S. § 84-28(c); part II(B), *supra*, of this opinion (findings used to support an imposed sanction must include express references to the circumstantial factors attached to the imposed sanction, e.g., Did defendant's misconduct result in harm or significant harm, or did defendant's misconduct pose a threat of potential harm or potential significant harm, and does the protection of the public require the punishment as imposed?). Certainly, none of the DHC's discipline-related findings and conclusions expressly identify a particular harm, resulting from defendant's actions, that either impeded the administration of justice or was suffered by a client, the public, or the legal profession. The order also does not expressly address how defendant's failure to maintain accurate financial records might result in potentially significant harm to any of the four entities. Moreover, even if defendant's deficient bookkeeping methods somehow pose a self-evident risk of harm to clients, the DHC order is bereft of any assessment as to the extent of such risk, which is a key factor in determining an appropriate sanction. See N.C.G.S. § 84-28(c); part II(B), *supra*, of this opinion (differentiating between the potential for harm and the potential for significant harm is a key factor in determining the appropriate

sanction). The mere potential for harm to a client is a statutory factor that supports a reprimand, one of the lesser sanctions that may be imposed on an attorney by the DHC. However, in order to justify the imposition of a more severe sanction, such as censure, suspension, or disbarment, the attorney's misconduct must show either significant harm or the *potential* for *significant* harm. The portion of the DHC order pertaining to discipline assuredly does not expressly link defendant's conduct with such potential, and our review of both the underlying evidence and the DHC's findings and conclusions fails to find support for an inference of such potential. For while we may recognize that an attorney's pattern of commingling account funds necessarily creates the potential for harm to his clients, our review of a specific transgression must also encompass its context, duration, and result. In the instant case, defendant's pattern of commingling account funds from 1994 to 1998 was revealed during an audit ordered by the State Bar. Evidence presented at the subsequent disciplinary hearing established that defendant had merged his personal funds with client funds throughout the period. The evidence also showed that defendant had made several withdrawals from the merged account that were in excess of those funds to which he was entitled. Thus, to that point, defendant's pattern of commingling accounts certainly ran the risk of harming clients since his unauthorized use of client funds, even as an interim book-balancing measure, could well have resulted in the eventual loss of such funds. However, no evidence presented at the hearing showed that any client had indeed suffered such a loss. Defendant testified that all clients had received what was due them, and that no client or creditor testified to the contrary. In addition, no other evidence was proffered that would indicate that any of the dozen clients at issue had suffered financial setback as a result of defendant's accounting practices. Therefore, within the confines of defendant's circumstances, we can find no grounds—from among either the underlying evidence or the DHC's discipline-related findings of fact—that would support a conclusion that his misconduct resulted in either: (1) potential harm to clients beyond that attributable to any commingling of attorney and client funds, or (2) *significant* potential harm to clients.

Keeping in mind that the primary purpose of sanctioning offending attorneys is to protect the public, *see* N.C.G.S. § 84-28(c), we next examine whether defendant's disbarment serves as an appropriate means to achieve such an end. In other words, did defendant's actions—essentially, the commingling of personal and client funds for an extended period of time—mandate the ultimate sanction in

order to protect the public from the threats created by such on-going commingling? *Id.*

While recognizing that the evidence establishes that defendant's bookkeeping practices carry a risk of potential harm, this Court's examination of the underlying evidence, conducted under the whole-record test, fails to find support for findings and conclusions that could serve as adequate justification for his disbarment. N.C.G.S. § 84-28(c) includes a five-tiered scheme of sanctions that escalate in severity depending on the attending circumstances. In the instant case, the underlying evidence would appear to support a conclusion that defendant's misconduct included the statutory circumstance of creating potential harm, which is an expressed factor attached to a reprimand, *see* N.C.G.S. § 84-28(c)(4), one of the lesser sanctions that may be imposed by the DHC. However, in order to impose a more severe sanction under the statute—censure, suspension, or disbarment—an attorney's misconduct must include attending circumstances that demonstrate: (1) a risk of *significant* potential harm, and (2) that the chosen sanction is necessary in order to protect the public. *See* N.C.G.S. § 84-28(c)(3)-(5). This Court has already determined that the attending circumstances of defendant's misconduct fail to evidence a risk of *significant* potential harm to clients. Thus, in our view, the expressed parameters of the statute preclude the DHC on the facts of this case from imposing on defendant any sanction that requires such a showing. As a result, this Court further concludes that: (1) the DHC exceeded its statutory authority by disbarring defendant for misdeeds that the evidence did not show carried with it a threat of *significant* potential harm to clients, and (2) the DHC's discipline-related findings of fact and conclusions of law fail to even address, much less demonstrate, why the sanction of disbarment is required in order to provide protection of the public.

We note that the Court of Appeals, in its initial review of this case, undertook an exhaustive review of the various sanctions imposed on offending attorneys in the past. *Talford,* 147 N.C. App. at 590-96, 556 S.E.2d at 351-54. The Court of Appeals noted that there were no cases resulting in the disbarment of an attorney for misconduct analogous to defendant's.[4] Our own review of prior cases involv-

---

4. Although the Court of Appeals referred to its examination of cases as part of its "proportionality" review, this Court expressly disapproves of any reference in the lower court's opinion that may suggest a "proportionality review" is included in an appellate court's examination of attorney disciplinary actions. Such actions are reviewed under the whole-record test, as described within the body of this opinion.

ing attorney disciplinary actions produced similar results, leading us to concur with the lower court's conclusion that the disbarment judgment imposed on defendant stands "as an aberration," *id.* at 595, 556 S.E.2d at 354, which must be reconsidered in light of the contextual analysis provided herein.

Thus, in sum, we hold as a matter of law that the three-part query of the whole-record test reveals that there is an inadequate "rational basis in the evidence" to support the DHC's decision to disbar defendant. *Rogers*, 297 N.C. at 65, 253 S.E.2d at 922. Because the DHC's order fails to provide either pertinent findings of fact or conclusions of law that address the statutory factors affecting its choice of discipline, its sanction-related findings and conclusions cannot serve as adequate support for its decision to disbar defendant. In addition, our independent review of the record fails to yield underlying evidence that would adequately support pertinent findings and/or conclusions that, in turn, could then serve as ample justification for a decision to disbar defendant under the circumstances. As a result, we affirm the holding of the Court of Appeals, and order that the Court of Appeals remand the case to the DHC for purposes of imposing a judgment that comports with the General Statutes of North Carolina as discussed in this opinion.

AFFIRMED AS MODIFIED.

Justice BRADY did not participate in the consideration or decision of this case.