IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA14-703

 Filed: 3 March 2015
THE NORTH CAROLINA STATE BAR,
Plaintiff,
 North Carolina State Bar Disciplinary
 v. Hearing Commission
 No. 13 DHC 17
ROBERT W. ADAMS, Attorney,
Defendant.

 Appeal by defendant from order of discipline entered 3 February 2014 by the

North Carolina State Bar Disciplinary Hearing Commission. Heard in the Court of

Appeals 18 November 2014.

 The North Carolina State Bar, by David R. Johnson and Katherine Jean, for
 plaintiff-appellee.

 Sigmon, Clark, Mackie, Hanvey & Ferrell, P.A., by Jason White, for defendant-
 appellant.

 STROUD, Judge.

 Robert W. Adams (“defendant”) appeals from an order of discipline entered by

the North Carolina State Bar Disciplinary Hearing Commission (“the DHC”). The

DHC found that defendant had mismanaged his trust account and ordered that

defendant’s law license be suspended. Defendant argues that (1) the DHC erred in

admitting evidence of prior audits’ results; (2) substantial evidence does not support

the DHC’s findings of fact; (3) the DHC’s findings of fact do not adequately support
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

its conclusions of law; and (4) the DHC’s findings and conclusions do not adequately

support its level of discipline. We affirm the DHC’s order of discipline.

 I. Background

 Defendant was licensed by the North Carolina State Bar in 1972. On or about

10 November 1991, the Grievance Committee of the State Bar reprimanded

defendant for mismanagement of his trust account. On or about 5 May 1994, the

Grievance Committee admonished defendant for failure to file proper accountings in

an estate and failure to handle a refinancing transaction properly. On or about 9

August 1996, defendant was reprimanded for failure to respond to a grievance filed

by a client. On or about 23 September 1996, pursuant to a random audit, a State Bar

auditor examined defendant’s trust account and informed defendant of several

deficiencies in defendant’s management of the account. On or about 30 April 1997,

the Grievance Committee censured defendant for failure to notify his clients of a

deposition, failure to appear for the deposition, and failure to inform his clients of

sanctions ordered.

 On or about 6 November 1997, the DHC imposed a two-year stayed suspension

on defendant for his neglect of a client’s case, failure to communicate with a client,

and failure to respond to the grievance. On 7 June 1999, the DHC extended

defendant’s stayed suspension. On 10 May 2000, based upon defendant’s failure to

file North Carolina individual tax returns for three prior years, the DHC imposed a

three-year suspension with an opportunity for defendant to apply for a stay of the

 -2-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

remaining period of the suspension after nine months. On or about 10 October 2008,

pursuant to another random audit, a State Bar auditor examined defendant’s trust

account and informed defendant of several deficiencies in defendant’s management

of the account.

 From 1 January 2012 to 1 July 2012, defendant practiced law in Hickory and

held client funds in his trust account. Among his areas of practice, defendant

represented clients in Social Security Administration cases. Defendant (1)

commingled his personal funds with client funds in the trust account, (2) failed to

ensure that checks drawn on the trust account showed the client balance, (3) failed

to reconcile the trust account quarterly, (4) failed to maintain a record related to the

electronic transfers from the trust account showing the name of the client or other

person to whom the funds belong, and (5) failed to maintain a ledger containing a

record of receipts and disbursements for each person from whom and for whom funds

were received and showing the current balance of funds held in the trust account for

each such person. See Revised Rules of Professional Conduct of the North Carolina

State Bar R. 1.15-2(a), 1.15-2(f), 1.15-2(h), 1.15-3(b)(2), 1.15-3(b)(3), 1.15-3(b)(5), and

1.15-3(d)(1) (2012).

 Defendant gave Alltel Wireless (“Alltel”), a cell phone company, bank account

information for his trust account in order to pay a former client’s cell phone bill. Alltel

made drafts from the trust account on 30 January 2012, 16 February 2012, 13 March

2012, and 2 April 2012. On 24 May 2012, Alltel attempted to draft approximately

 -3-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

$1,458.98 from the trust account, while the account held client funds, but the

transaction was unsuccessful because the trust account held insufficient funds to

cover the draft. Defendant’s bank issued a notice of non-sufficient funds to the State

Bar. On 25 May 2012, Alltel made a successful draft from the trust account for a

much lower amount. But defendant did not misappropriate any client funds, since

the attempted 24 May 2012 draft was unsuccessful.

 On 10 July 2013, the State Bar filed a complaint against defendant alleging

that defendant had mismanaged his trust account from 1 January 2012 to 1 July

2012. Defendant failed to file an answer or any responsive pleading. On 10 December

2013, the DHC entered a default judgment against defendant, thus admitting the

State Bar’s allegations at the adjudicatory phase. On 10 January 2014, the DHC held

a hearing on the disposition phase to determine the appropriate level of discipline.

On 3 February 2014, in its order of discipline, the DHC imposed a four-year

suspension with an opportunity for defendant to apply for a stay of the remaining

period of the suspension after two years if he complies with certain conditions. On

27 February 2014, defendant gave timely notice of appeal.

 II. Admission of Evidence

 Defendant contends that the DHC erred in admitting the results of two prior

audits, in contravention of North Carolina Rules of Evidence 404(b) and 403. N.C.

Gen. Stat. § 8C-1, Rules 403, 404(b) (2013).

A. Standard of Review

 -4-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

 We review de novo the DHC’s decision to admit evidence under Rule 404(b).

See State v. Beckelheimer, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012) (discussing

Rule 404(b) in the context of a criminal trial); N.C. Gen. Stat. § 8C-1, Rule 404(b). But

we review the DHC’s Rule 403 determination for an abuse of discretion. See

Beckelheimer, 366 N.C. at 130, 726 S.E.2d at 159; N.C. Gen. Stat. § 8C-1, Rule 403.

“An abuse of discretion results where the court’s ruling is manifestly unsupported by

reason or is so arbitrary that it could not have been the result of a reasoned decision.”

State v. Ward, 364 N.C. 133, 139, 694 S.E.2d 738, 742 (2010) (quotation marks

omitted).

B. Analysis

 Attorney discipline cases have two phases: (1) an adjudicatory phase in which

the DHC determines whether the defendant committed the misconduct; and (2) a

disposition phase in which the DHC determines the appropriate discipline. N.C.

State Bar v. Talford, 356 N.C. 626, 634, 576 S.E.2d 305, 311 (2003). In a hearing

before the DHC, the North Carolina Rules of Evidence govern the admissibility of

evidence. 27 N.C. Admin. Code § 1B.0114(t) (2014); N.C. State Bar v. Mulligan, 101

N.C. App. 524, 527, 400 S.E.2d 123, 125 (1991). Rule 404(b) provides in pertinent

part:

 Evidence of other crimes, wrongs, or acts is not
 admissible to prove the character of a person in order to
 show that he acted in conformity therewith. It may,
 however, be admissible for other purposes, such as proof of
 motive, opportunity, intent, preparation, plan, knowledge,

 -5-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

 identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b). This list of permissible purposes is not exclusive,

and evidence of other crimes, wrongs, or acts is admissible so long as it is relevant to

any fact or issue other than the defendant’s character to act in conformity therewith.

State v. Gordon, ___ N.C. App. ___, ___, 745 S.E.2d 361, 364, disc. rev. denied, ___

N.C. ___, 749 S.E.2d 859 (2013).

 Defendant argues that the prior audits’ results, which indicate several

deficiencies in defendant’s management of his trust account, were inadmissible under

Rule 404(b). Defendant asserts that this evidence was not proffered to show intent,

knowledge, or absence of mistake, because, in its default judgment at the

adjudicatory phase, the DHC had already determined that defendant had violated

the Rules of Professional Conduct.

 But during the disposition phase, the DHC will consider “any evidence relevant

to the discipline to be imposed.” 27 N.C. Admin. Code § 1B.0114(w). “[I]ntent of the

defendant to commit acts where the harm or potential harm is foreseeable” is a factor

that the DHC considers in imposing suspension, and “a pattern of misconduct” is a

factor that the DHC considers in all cases. Id. § 1B.0114(w)(1)(B), (3)(F). The prior

audits’ results were relevant to these two factors and were not used to show

defendant’s propensity to mismanage his trust account, because the DHC had already

determined that defendant had committed that misconduct. Accordingly, we hold

 -6-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

that the DHC did not violate Rule 404(b) in admitting this evidence. See Gordon, ___

N.C. App. at ___, 745 S.E.2d at 364; N.C. Gen. Stat. § 8C-1, Rule 404(b).

 Defendant next contends that the prior audits’ results were inadmissible under

Rule 403. See N.C. Gen. Stat. § 8C-1, Rule 403. Rule 403 provides: “Although

relevant, evidence may be excluded if its probative value is substantially outweighed

by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or

by considerations of undue delay, waste of time, or needless presentation of

cumulative evidence.” Id. “Unfair prejudice” means “an undue tendency to suggest

decision on an improper basis, commonly, though not necessarily, [on] an emotional

one.” State v. Cunningham, 188 N.C. App. 832, 836, 656 S.E.2d 697, 700 (2008).

 As discussed above, the prior audits’ results were relevant to the factors of

“intent of the defendant to commit acts where the harm or potential harm is

foreseeable” and “a pattern of misconduct[.]” See 27 N.C. Admin. Code §

1B.0114(w)(1)(B), (3)(F). Defendant has not demonstrated an improper basis on

which the DHC may have considered this evidence. See Cunningham, 188 N.C. App.

at 836, 656 S.E.2d at 700. We hold that the evidence’s probative value was not

substantially outweighed by the danger of unfair prejudice or needless presentation

of cumulative evidence. See N.C. Gen. Stat. § 8C-1, Rule 403. Accordingly, we hold

that the DHC did not violate Rule 403 in admitting this evidence.

 III. Order of Discipline

A. Standard of Review

 -7-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

 We review the DHC’s order of discipline under the “whole record” test. Talford,

356 N.C. at 632, 576 S.E.2d at 309.

 [We] determine if the DHC’s findings of fact are supported
 by substantial evidence in view of the whole record, and
 whether such findings of fact support its conclusions of law.
 Such supporting evidence is substantial if a reasonable
 person might accept it as adequate backing for a
 conclusion. The whole-record test also mandates that the
 reviewing court must take into account any contradictory
 evidence or evidence from which conflicting inferences may
 be drawn. Moreover, in order to satisfy the evidentiary
 requirements of the whole-record test in an attorney
 disciplinary action, the evidence used by the DHC to
 support its findings and conclusions must rise to the
 standard of clear, cogent, and convincing. Ultimately, the
 reviewing court must apply all the aforementioned factors
 in order to determine whether the decision of the lower
 body, e.g., the DHC, has a rational basis in the evidence.

Id., 576 S.E.2d at 309-10 (citations, quotation marks, and footnotes omitted).

 We consider three questions to determine if the DHC’s decision has a “rational

basis in the evidence”: (1) Is there adequate evidence to support the order’s expressed

findings of fact? (2) Do the order’s expressed findings of fact adequately support the

order’s subsequent conclusions of law? (3) Do the expressed findings and conclusions

adequately support the lower body’s ultimate decision? Id. at 634, 576 S.E.2d at 311.

“[T]he mere presence of contradictory evidence does not eviscerate challenged

findings, and the reviewing court may not substitute its judgment for that of the

[DHC].” N.C. State Bar v. Key, 189 N.C. App. 80, 84, 658 S.E.2d 493, 497 (2008). The

 -8-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

DHC determines the credibility of the witnesses and the weight of the evidence. N.C.

State Bar v. Ethridge, 188 N.C. App. 653, 665, 657 S.E.2d 378, 386 (2008).

 The DHC must support its punishment choice with written findings that are

consistent with the statutory scheme of N.C. Gen. Stat. § 84-28(c). Talford, 356 N.C.

at 638, 576 S.E.2d at 313; see also N.C. Gen. Stat. § 84-28(c) (2013). The order must

also include adequate and specific findings that address how the punishment choice

(1) is supported by the particular set of factual circumstances and (2) effectively

provides protection for the public. Id., 576 S.E.2d at 313.

B. Findings of Fact

 Defendant contends that Findings of Fact Regarding Discipline 7 and 8 are not

supported by substantial evidence. Those findings of fact state:

 7. The Alltel draft on [the trust account] created the
 potential for significant harm to clients of Defendant with
 entrusted funds in [that account].

 8. Defendant’s failure to comply with the State Bar’s
 regulations related to his trust account has the potential to
 cause significant harm to clients of Defendant and to the
 public’s perception of the legal profession.

 In Talford, the North Carolina Supreme Court discussed the difference

between “potential harm” and “significant potential harm” within the context of a

defendant’s mismanagement of his trust account. Id. at 640, 576 S.E.2d at 314-15.

There, the defendant had commingled his personal funds with client funds in his trust

account and had made several withdrawals from the account that were in excess of

 -9-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

those funds to which he was entitled. Id., 576 S.E.2d at 314. But no client suffered

a loss or a financial setback, since the defendant maintained enough personal funds

in the account to cover any amounts due to clients. Id., 576 S.E.2d at 314. The North

Carolina Supreme Court held that, within the confines of these circumstances, the

defendant’s misconduct had created “potential harm” to clients but had not created

“a risk of significant potential harm” to clients. Id. at 640-41, 576 S.E.2d at 314-15.

The Court ultimately held that the DHC’s order of discipline did not have a “rational

basis in the evidence” because (1) the order failed to provide either pertinent findings

of fact or conclusions of law that addressed the statutory factors delineated in N.C.

Gen. Stat. § 84-28(c); and (2) inadequate evidence supported the findings of fact and

conclusions of law that would be necessary to justify the DHC’s punishment choice.

Id. at 642, 576 S.E.2d at 315-16.

 The default judgment here established the facts as alleged in the State Bar’s

complaint that defendant (1) commingled his personal funds with client funds in the

trust account, (2) failed to ensure that checks drawn on the trust account showed the

client balance, (3) failed to reconcile the trust account quarterly, (4) failed to maintain

a record related to the electronic transfers from the trust account showing the name

of the client or other person to whom the funds belong, and (5) failed to maintain a

ledger containing a record of receipts and disbursements for each person from whom

and for whom funds were received and showing the current balance of funds held in

the trust account for each such person. See Revised Rules of Professional Conduct of

 -10-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

the North Carolina State Bar R. 1.15-2(a), 1.15-2(f), 1.15-2(h), 1.15-3(b)(2), 1.15-

3(b)(3), 1.15-3(b)(5), and 1.15-3(d)(1). The default judgment also established that on

24 May 2012, Alltel had attempted to draft approximately $1,458.98 from the trust

account, while the account held client funds, but that the transaction was

unsuccessful only because the trust account held insufficient funds to cover the draft.

 Relying on Talford, defendant contends that his misconduct did not cause

“significant potential harm” as stated in Findings of Fact Regarding Discipline 7 and

8, because no client funds were misappropriated. See Talford, 356 N.C. at 640, 576

S.E.2d at 314-15. Talford, however, is distinguishable for two reasons. First, in

Talford, the DHC’s order failed to provide either pertinent findings of fact or

conclusions of law that addressed the statutory factors delineated in N.C. Gen. Stat.

§ 84-28(c). Id. at 642, 576 S.E.2d at 315-16. To satisfy N.C. Gen. Stat. § 84-28(c), an

order imposing suspension or disbarment must show (1) how a defendant’s actions

resulted in significant harm or significant potential harm; and (2) why suspension

and disbarment are the only sanction options that can adequately serve to protect the

public from potential future transgressions by the defendant. Id. at 638, 576 S.E.2d

at 313. In Talford, the DHC’s order addressed neither statutory factor. Id. at 639,

576 S.E.2d at 314. The DHC limited its findings of fact regarding discipline to “six

conclusory statements about the aggravating and mitigating factors surrounding

defendant’s misconduct.” Id., 576 S.E.2d at 314.

 -11-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

 In contrast, here, the DHC’s order includes findings of fact and conclusions of

law that satisfy N.C. Gen. Stat. § 84-28(c). See id. at 638, 576 S.E.2d at 313. The

DHC’s order includes findings and conclusions that address the first issue and

explain how defendant’s actions resulted in significant potential harm:

 [Finding of Fact Regarding Discipline] 4. Defendant’s
 mismanagement of his trust account resulted in numerous
 violations of the Rules of Professional Conduct.

 ...

 6. The attempt by Alltel to draft $1,458.98 from [the trust
 account] on May 24, 2012 failed because [the trust
 account], though containing entrusted funds, had
 insufficient funds to cover the Alltel draft.

 7. The Alltel draft on [the trust account] created the
 potential for significant harm to clients of Defendant with
 entrusted funds in [that account].

 8. Defendant’s failure to comply with the State Bar’s
 regulations related to his trust account has the potential to
 cause significant harm to clients of Defendant and to the
 public’s perception of the legal profession.

 ....

 [Conclusion of Law Regarding Discipline] 4. Defendant[’s]
 misconduct resulted in potential significant harm to his
 clients by placing entrusted client funds at risk of
 misapplication and misappropriation.

 5. Defendant’s failure to properly maintain, manage and
 handle entrusted funds betrays a vital trust that clients
 and the public place in attorneys and the legal profession.

 -12-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

 The DHC’s order also includes conclusions of law that address the second issue

and explain why suspension is the only sanction option that can adequately serve to

protect the public from potential future transgressions by defendant:

 [Conclusion of Law Regarding Discipline] 6. The [DHC]
 has considered issuing an admonition, reprimand or
 censure but concludes that such discipline would not be
 sufficient discipline because of the factors noted in
 paragraphs 1 and 3 of this section and the gravity of the
 potential significant harm to the clients. The [DHC]
 further concludes that such discipline would fail to
 acknowledge the seriousness of the offenses committed by
 Defendant and send the wrong message to attorneys
 regarding the conduct expected of members of the Bar in
 this State.

 7. [The DHC] has considered lesser alternatives and
 concludes that a suspension is appropriate under the facts
 and circumstances of this case to address the potential for
 significant harm to Defendant’s clients, and for the
 protection of Defendant’s clients and the public.

 8. For these reasons, the [DHC] finds that an order
 imposing discipline less than a suspension of Defendant’s
 law license would not be appropriate.

Unlike the order in Talford, the DHC’s order here includes findings of fact and

conclusions of law that satisfy the statutory framework of N.C. Gen. Stat. § 84-28(c).

See id., 576 S.E.2d at 313.

 Second, in Talford, the defendant’s misconduct did not result in any potential

harm to clients “beyond that attributable to any commingling of attorney and client

funds[.]” Id. at 640, 576 S.E.2d at 314-15. There, the trust account contained

sufficient personal funds belonging to the defendant to cover obligations owed to or

 -13-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

on behalf of clients. Id., 576 S.E.2d at 314. In contrast, here, on 24 May 2012, a third

party, Alltel, attempted to draft approximately $1,458.98 from the trust account,

while the account held client funds, but the transaction was unsuccessful only

because the trust account held insufficient funds to cover the draft. But for the fact

that the trust account held insufficient funds, defendant’s mismanagement of the

trust account would have directly led to the misappropriation of client funds. Unlike

in Talford, defendant’s misconduct here led to the potential misappropriation of client

funds, potential harm that extends well beyond that attributable to commingling

alone. See id., 576 S.E.2d at 314-15. In light of these two distinctions, we hold that

Talford is distinguishable.

 Defendant further contends that substantial evidence does not support

Finding of Fact Regarding Discipline 8, because the State Bar proffered no evidence

of potential harm to the public’s perception of the legal profession. Defendant cites

no authority which requires that any particular type of evidence be presented to show

potential harm “to the public’s perception of the legal profession[,]” nor have we found

any such authority. The very purpose of attorney discipline presupposes that

attorney misconduct can harm the public and can tarnish the public’s perception of

the legal profession. See 27 N.C. Admin. Code. § 1B.0101 (2014) (“Discipline for

misconduct is not intended as punishment for wrongdoing but is for the protection of

the public, the courts, and the legal profession.”). In this case, defendant had been

publicly disciplined on six prior occasions, including several instances of financial

 -14-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

mismanagement, and had been the subject of two trust account audits with

deficiencies in both, and yet he still failed to maintain his trust account properly.

Defendant’s repeated failures to comply with the Rules of Professional Conduct and

prior lesser sanctions and the risk of significant harm to clients supports a finding of

potential harm to the public’s perception of the legal profession. Because defendant’s

mismanagement of the trust account directly led to the potential misappropriation of

client funds, we hold that substantial evidence supports the DHC’s Findings of Fact

Regarding Discipline 7 and 8 that defendant’s misconduct created “the potential for

significant harm” to clients and to the public’s perception of the legal profession.

C. Conclusions of Law

 Defendant next contends that the findings of fact do not adequately support

Conclusion of Law Regarding Discipline 1. This conclusion states:

 The [DHC] has carefully considered all of the different
 forms of discipline available to it. In addition, the [DHC]
 has considered all of the factors enumerated in [27 N.C.
 Admin. Code § 1B.0114(w)(1)] of the Rules and Regulations
 of the North Carolina State Bar and concludes the
 following factors warrant suspension of Defendant[’s]
 license:

 a. Intent of Defendant to commit acts where the harm
 or potential harm is foreseeable;

 b. Circumstances reflecting the Defendant’s lack of
 honesty, trustworthiness, or integrity;

 c. Negative impact of Defendant’s actions on client’s or
 public’s perception of the legal profession; and

 -15-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

 d. Multiple instances of failure to participate in the
 legal profession’s self-regulation process.

 Defendant contends that the DHC’s findings of fact do not adequately support

its sub-conclusion of law that defendant intended “to commit acts where the harm or

potential harm is foreseeable[,]” because he did not authorize the 24 May 2012 draft

by Alltel. But the default judgment establishes that, in addition to the unsuccessful

24 May 2012 draft, Alltel had made successful drafts from the trust account on 30

January 2012, 16 February 2012, 13 March 2012, 2 April 2012, and 25 May 2012.

The DHC found that defendant “had several months to take action with [his bank] to

block the drafts but failed to do so.”

 Additionally, the DHC made other findings of fact to support its sub-conclusion

that defendant intended to commit acts where the harm or potential harm is

foreseeable:

 [Finding of Fact Regarding Discipline] 1. The State Bar
 conducted two prior random audits of [the trust account],
 one in 1996 and the second in 2008. Both audits disclosed
 deficiencies in Defendant’s trust account management
 practices.

 2. Among other deficiencies, both random audits
 disclosed that at the time of the audits Defendant: 1) did
 not maintain ledgers for each person or entity from whom
 or for who[m] trust money was received; and 2) did not
 conduct quarterly reconciliations.

 3. After the 1996 random audit, Defendant wrote to the
 State Bar agreeing to correct the deficiencies in his trust
 account management practices including maintaining a
 ledger and conducting quarterly audits; however, those

 -16-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

 same deficiencies, as well as the others noted above,
 continued in the present proceeding.

 ....

 9. Defendant has received prior discipline by the Grievance
 Committee and the DHC, as follows: 90G0044—
 Reprimand (noting deficiencies in handling entrusted
 funds)[.]

In light of its findings on defendant’s long history of mismanaging entrusted funds

and defendant’s failure to block Alltel’s repeated drafting of funds from the trust

account, we hold that the DHC’s findings of fact adequately support its sub-conclusion

that defendant intended to commit acts where the harm or potential harm is

foreseeable. See id. at 634, 576 S.E.2d at 311.

 Defendant further argues that the DHC’s findings of fact do not adequately

support its sub-conclusion that circumstances reflect defendant’s lack of honesty,

trustworthiness, or integrity, because he “fully complied” with the State Bar’s

investigation. But defendant’s compliance with the State Bar’s investigation does not

undermine the DHC’s findings that defendant repeatedly mismanaged his trust

account, even after prior disciplinary proceedings addressing similar issues of

financial mismanagement, and exposed his clients to significant potential harm.

These findings adequately support the DHC’s sub-conclusion that circumstances

reflect defendant’s lack of honesty, trustworthiness, or integrity. See id., 576 S.E.2d

at 311.

 -17-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

 Defendant next argues that the DHC’s findings of fact do not support its sub-

conclusion that defendant’s misconduct negatively impacted his clients’ or the public’s

perception of the legal profession. But Finding of Fact Regarding Discipline 8, which

states that defendant’s misconduct had the potential to cause significant harm to

clients and to the public’s perception of the legal profession, adequately supports this

sub-conclusion. See id., 576 S.E.2d at 311.

 Defendant also contends that the DHC’s findings of fact do not support its

Conclusion of Law Regarding Discipline 4. This conclusion states: “Defendant[’s]

misconduct resulted in potential significant harm to his clients by placing entrusted

client funds at risk of misapplication and misappropriation.” But, as discussed above,

substantial evidence supports the DHC’s Findings of Fact Regarding Discipline 7 and

8 that defendant’s misconduct created significant potential harm to client funds.

These findings adequately support Conclusion of Law Regarding Discipline 4. See

id., 576 S.E.2d at 311. We hold that the DHC’s findings of fact adequately support

its Conclusions of Law Regarding Discipline 1 and 4. See id., 576 S.E.2d at 311.

D. Level of Discipline

 Defendant further contends that the DHC’s findings of fact and conclusions of

law do not adequately support its ultimate decision to suspend defendant’s license.

In order to suspend a defendant’s license, the DHC’s order must show (1) how the

defendant’s actions resulted in significant harm or significant potential harm; and (2)

why suspension is the only sanction option that can adequately serve to protect the

 -18-
 THE NORTH CAROLINA STATE BAR V. ADAMS

 Opinion of the Court

public from potential future transgressions by the defendant. Id. at 638, 576 S.E.2d

at 313. As discussed above, the DHC’s order here includes findings of fact and

conclusions of law that satisfy this requirement. Accordingly, we hold that the DHC’s

findings and conclusions adequately support its ultimate decision to suspend

defendant’s license. See id. at 634, 576 S.E.2d at 311.

 IV. Conclusion

 For the foregoing reasons, we affirm the DHC’s order of discipline.

 Affirmed.

 Judges CALABRIA and McCULLOUGH concur.

 -19-