THE NORTH CAROLINA STATE BAR, Plaintiff v. PAMELA A. HUNTER, ATTORNEY, Defendant

No. COA11-221

(Filed 6 December 2011)

**1. Attorneys—malpractice—DisciplinaryHearing  Commission calling own witness**

The North Carolina State Bar Disciplinary Hearing Commission did not abuse its discretion in an attorney malpractice case by calling and questioning its own witness at the close of all evidence without a prior subpoena.

**2. Attorneys—malpractice—failure to exercise due diligence**

The North Carolina State Bar Disciplinary Hearing Commission did not err in an attorney malpractice case by determining that defendant attorney failed to exercise due diligence in the representation of two client matters in violation of Rule 1.3 of the Revised Rules of Professional Conduct.

Appeal by Defendant from Order of Discipline entered 2 June 2010 by the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 13 October 2011.

*The North Carolina State Bar, by Deputy Counsel David R. Johnson and Counsel Katherine Jean, for Plaintiff-appellee.*

*N. Clifton Cannon, Jr., for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Pamela A. Hunter ("Defendant") appeals the order of the North Carolina State Bar Disciplinary Hearing Commission (the "Commission") imposing a censure on Defendant. Defendant contends the Commission erred at her hearing when it called and questioned a witness on its own motion at the conclusion of the evidence. Defendant also contends the Commission erred when it allegedly had *ex parte* communications with this witness. Defendant finally contends the Commission committed reversible error when it determined Defendant failed to exercise due diligence in the representation of certain client matters. For the following reasons, we disagree and affirm the Commission's order.

**N.C. STATE BAR v. HUNTER**

[217 N.C. App. 216 (2011)]

## I. Factual & Procedural Background

Ms. Hunter has been a licensed attorney in North Carolina since 1978. Her law office is in Mecklenburg County. Ms. Hunter was censured by the Commission for her representation in two lawsuits.

### A. Amini Lawsuit

Ramin Amini and his wife contracted Bruce Sisk to do construction work at their residence for $287,000.00. Mr. Sisk first furnished materials on 1 May 2006 and last furnished them on 17 May 2006. Mr. Amini testified that Mr. Sisk did not complete the job. On 7 September 2006, Mr. Sisk filed a claim of lien on the property for $314,620.00, listing "Bruce Sisk, Carter Management Associates [("CMA")]" as the "person claiming the lien." The claim of lien was filed by Mr. Sisk and CMA's attorney, Christopher Vann. Mr. Amini did not know who or what CMA was but knew of a man named Tom Carter who was involved in construction and was the consultant to the builder in another case Ms. Hunter handled for him. When Mr. Amini saw CMA on the lien, he assumed Mr. Sisk and CMA were working together and that Mr. Carter operated CMA. Mr. Amini took the claim of lien to Ms. Hunter, who recommended filing suit against Mr. Sisk and CMA for fraudulent lien and breach of contract.

On or about 10 October 2006, Ms. Hunter filed suit on behalf of Mr. Amini and his wife styled *Ramin Amini and wife, Sepidah Amini v. Bruce Sisk, Carter Management Associates, and Bruce Sisk d/b/a Carter Management Associates* (the "Amini lawsuit" or the "Amini matter"). That same day, a summons was issued. Ms. Hunter did not attempt to effect service via the sheriff but instead hired a private process server to obtain service. She testified that the private process server attempted several times to serve Mr. Sisk and CMA at 917 Zeb-Helms Road, Monroe, North Carolina 28112, an address provided to her by Mr. Amini. However, the server was unsuccessful and believed no one lived at that address. Ms. Hunter also testified she attempted service twice by certified mail, but both attempts were unsuccessful. Ms. Hunter claimed she searched the Secretary of State's database and records from the Department of Motor Vehicles to find CMA's address. She testified she also checked the Georgia Department of Motor Vehicles records off a tip but could not find a valid address for CMA. Ms. Hunter did not choose to serve via publication because she saw that as a last resort option. Ms. Hunter further stated she did not request Mr. Sisk and CMA's attorney, Mr. Vann, to accept service on his clients' behalf until after the summons expired.

Therefore, none of the defendants in the Amini matter was served within sixty days of the 10 October 2006 summons. Ms. Hunter also did not obtain an endorsement or an alias and pluries summons in the Amini matter within ninety days of the 10 October 2006 summons.[1] Accordingly, the summons lapsed on 9 January 2007.

On 27 October 2006, Mr. Sisk filed a complaint based upon the same facts as the Amini lawsuit styled *Bruce Sisk, Carter Management Services, Inc. v. Sepidah Amini, and husband Ramin Amini* (the "Sisk lawsuit" or the "Sisk matter") to perfect his claim of lien. Ann Tyson, Mr. Amini's assistant, testified she found the complaint and a signed return receipt in the mailbox at 9206 Sandpiper Drive, a house owned by Mr. Amini. She claimed she went to the courthouse, confirmed the complaint was legitimate, and obtained a copy of the complaint. Ms. Tyson testified she immediately called Mr. Amini, who told her to fax Ms. Hunter a copy of the complaint and that they would go and speak with Ms. Hunter about the complaint that same day. Ms. Tyson testified she faxed a copy of the complaint to Ms. Hunter and delivered her a copy in person with Mr. Amini. Mr. Amini testified that Ms. Hunter told him not to worry about the matter until he was served. Ms. Tyson claimed Ms. Hunter told her not to insult her integrity as an attorney and that she would handle the matter. Ms. Tyson also testified she investigated with the postal service about who signed for the complaint but was unable to obtain useful information because she was a layperson.

Ms. Hunter, however, denied this conversation ever took place or that she ever received a copy of the Sisk complaint. She testified that the disciplinary hearing was the first time she had ever heard that Mr. Amini ever received the Sisk complaint. However, Ms. Hunter did not check with Mr. Vann, Mr. Sisk and CMA's attorney, to see if he filed suit to enforce his clients' claim of lien. The trial court found that the Aminis did not engage Ms. Hunter to file a responsive pleading to the Sisk lawsuit.

On 23 February 2007, a default judgment was entered against the Aminis for failure to file a responsive pleading. Mr. Amini testified he received the notice of default judgment in the mail and took it to Ms. Hunter. Ms. Hunter testified that this was the first time she heard of the Sisk lawsuit. On 23 February 2007, default judgment was entered against the Aminis. That same day, Ms. Hunter filed a Motion for Relief

---

1. Expiration of the statute of limitations on the Aminis' claims was not imminent during the times relevant to Ms. Hunter's representation of the Aminis.

from Judgment in the Sisk matter on behalf of the Aminis, claiming the Aminis were never served with process in the Sisk lawsuit. She testified that if Mr. Amini or Ms. Tyson had faxed or brought her the Sisk complaint, she would have assumed Mr. Amini had been served and would not have filed the Motion for Relief from Judgment on the basis that service had not been properly effected. At the default judgment hearing, the Aminis denied receiving and signing for the complaint that was delivered to a house of theirs in Waxhaw. Both the trial court and this Court, however, found that the Aminis were properly served via certified mail on 25 November 2006, when the summons and complaint were delivered, received, and signed for. On 28 March 2007, the trial court issued an order denying the Aminis' Motion for Relief from Judgment. The Aminis entered notice of appeal through Ms. Hunter but had another attorney, Leslie Rawls, carry out the appeal.

In the meantime, Ms. Hunter finally obtained an alias and pluries summons and thereby revived the Amini matter on 24 July 2007. Accordingly, under the provisions of Rule 4(e) of the Rules of Civil Procedure, the Amini lawsuit was discontinued between 9 January, the expiration of the original summons, and 24 July 2007 and was thus deemed to have commenced on 24 July 2007. On 28 July 2007, Mr. Sisk was finally served with process in the Amini matter.

On 20 August 2007, Mr. Sisk filed a Motion to Dismiss the Amini lawsuit based on the default judgment in his favor in the Sisk lawsuit. Upon reviewing the motion, the trial court dismissed the Amini lawsuit without prejudice. The court specified the Aminis could not re-file the previously discontinued lawsuit until this Court resolved the Aminis' appeal of the denial of their Motion to Set Aside the Default Judgment in the Sisk lawsuit. On 4 March 2008, this Court affirmed the trial court's denial of the Aminis' Motion to Set Aside the Default Judgment in the Sisk lawsuit, focusing much attention on the fact that the Aminis never properly served Mr. Sisk or CMA in the Amini lawsuit.

## B. Wilson Lawsuit

On 19 December 2006, Rickey L. Wilson filed a complaint styled *Rickey L. Wilson v. DI-RA, LLC d/b/a Camron Transportation* (the "Wilson lawsuit" or the "Wilson matter"). Mr. Amini is a principal of Camron Transportation ("Camron") and engaged Ms. Hunter to represent Camron in the Wilson lawsuit. Ms. Hunter filed a Response to Plaintiff's Request for Admissions on behalf of Camron but did not file an answer to the Wilson complaint. Ms. Hunter received a letter

dated 27 February 2007 from Mr. Wilson's attorney reminding her no answer had been filed. Still, no answer was filed.

On 19 March 2007, default judgment was entered against DI-RA, LLC d/b/a Camron in the Wilson matter. On 23 March 2007, Ms. Hunter filed a Motion for Relief and To Set Aside Entry of Default on behalf of Camron. Ms. Hunter, in her motion, did not take responsibility in the failure to timely file an answer to the Wilson complaint. Her motion was denied. On 23 August 2007, default judgment was entered against Camron in this matter. After the Aminis consulted other counsel, Ms. Hunter, by agreement, personally paid the obligation owed by DI-RA, LLC d/b/a Camron in the Wilson matter.

## C. Disciplinary Hearing

On 14 September 2009, the North Carolina State Bar ("Plaintiff") filed a complaint against Ms. Hunter with the Commission regarding Ms. Hunter's representation in both the Amini and Wilson matters. The hearing was set for 9 April 2010 and conducted before a panel of the Commission consisting of Tommy W. Jarrett, Chair, Robert F. Siler, and Donald G. Willhoit. The panel found Ms. Hunter's conduct constituted grounds for discipline pursuant to N.C. Gen. Stat. § 84-28(b)(2). The panel found Ms. Hunter failed to act with reasonable diligence and promptness in violation of Rule 1.3 of the Revised Rules of Professional Conduct in handling both the Amini and Wilson matters. The panel entered an order of censure against Ms. Hunter on 2 June 2010 and served Ms. Hunter on 14 June 2010. Ms. Hunter entered timely notice of appeal on 12 July 2010.

## II. Jurisdiction

Appellate review of State Bar orders is authorized under N.C. Gen. Stat. § 84-28(h) which provides that: "There shall be an appeal of right by either party from any final order of the Disciplinary Hearing Commission to the North Carolina Court of Appeals." N.C. Gen. Stat. § 84-28(h) (2009).

## III. Analysis

Ms. Hunter argues the trial court erred when it called its own witness to testify who was not on the witness list of either party, who had not previously been identified or subpoenaed to offer testimony against Ms. Hunter, and with whom the court allegedly had *ex parte* communications. Furthermore, Ms. Hunter argues the trial court committed reversible error as a matter of law when it found Ms. Hunter

failed to exercise due diligence in the representation of two client matters. After careful review, we affirm the Commission's order.

## A. Calling its own Witness

[1] Ms. Hunter's first four arguments concern the Commission's decision to call and question its own witness at the close of all the evidence. Because the analyses of these arguments overlap, we address them together. The standard of review for this Court's assessment of evidentiary rulings is abuse of discretion. *State v. Boston,* 165 N.C. App. 214, 218, 598 S.E.2d 163, 166 (2004).

This Court has previously held it is within the Commission's discretion to ask questions of witnesses to clarify material matters. *State Bar v. Talman,* 62 N.C. App. 355, 362, 303 S.E.2d 175, 179 (1983). The Discipline and Disability Rules of the North Carolina State Bar provide that the North Carolina Rules of Evidence apply to hearings before the Commission. N.C. R. BAR Ch. 1, Subch. B, § .0114 (2010). Accordingly, the Commission has express authority to call its own witness pursuant to Evidence Rule 614, which provides:

Rule 614. Calling and interrogation of witnesses by court.

(a) Calling by court.—*The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross examine witnesses thus called.*

(b) Interrogation by court.—*The court may interrogate witnesses, whether called by itself or by a party.*

(c) Objections.—No objections are necessary with respect to the calling of a witness by the court or to questions propounded to a witness by the court but it shall be deemed that proper objection has been made and overruled.

N.C. Gen. Stat. § 8C-1, Rule 614 (2009) (emphasis added).

Here, pursuant to statutory authority, the panel called Mr. Amini's assistant, Ms. Tyson, on its own motion, deeming the proper objections had been made and overruled by each party. Ms. Hunter's argument that the Commission called Ms. Tyson to testify *against* Ms. Hunter and therefore established the impression of judicial leaning is unfounded. Mr. Amini had testified that Ms. Tyson was the person who retrieved and faxed to Ms. Hunter the Sisk complaint. Therefore, we hold the Commission acted within its discretion in asking Ms. Tyson clarifying questions regarding receipt of the Sisk complaint.

The panel gave Ms. Hunter's counsel the opportunity to cross-examine Ms. Tyson, and counsel did so without requesting a recess to prepare or an opportunity to call a rebuttal witness. The only action Ms. Hunter's counsel took after Ms. Tyson testified was to request permission to recall Ms. Hunter to the stand, which was granted. Accordingly, there is nothing to suggest the trial court abused its discretion in calling and questioning Ms. Tyson or that Ms. Hunter was unfairly prejudiced thereby.

Ms. Hunter contends the elicited testimony of Ms. Tyson constituted an unfair surprise, preventing her from conducting an effective cross-examination of Ms. Tyson. "[The p]urpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate." *State v. Payne*, 327 N.C. 194, 202, 394 S.E.2d 158, 162 (1990), *cert. denied*, 498 U.S. 1092, 112 L. Ed. 2d 1062 (1991). Here, however, we find Ms. Tyson's testimony was not an unfair surprise because Ms. Hunter interacted with Ms. Tyson before trial and could have anticipated her testimony. Mr. Amini and another witness, Allen Patterson, both refer to Ms. Tyson in their testimonies. Ms. Hunter even admits at the hearing that she spoke with Ms. Tyson about trying to trace a receipt with the postal service showing service of the Sisk complaint on Mr. Amini, indicating she was aware of Ms. Tyson's existence and relation to the matter at hand. Therefore, she cannot now characterize Ms. Tyson's testimony an unfair surprise.[2]

Ms. Hunter further argues the Commission erred by not issuing a subpoena for Ms. Tyson before having her testify. Although the North Carolina State Bar Rules give the Commission the power to subpoena witnesses and compel their attendance, they do not *require* the Commission to do so before eliciting a witness's testimony. *See* N.C. R. BAR Ch. 1, Subch. B, § .0114(s) (2010). Thus, we hold the Commission did not err in calling Ms. Tyson to testify on its own motion without a prior subpoena.

Ms. Hunter also contends the Commission had prohibited *ex parte* communications with Ms. Tyson. Ms. Hunter argues the Commission's knowledge of the name, identity, and nature of the testimony to be proffered by Ms. Tyson "clearly establishes that there

---

2. Defendant also contends the Commission's calling of a witness who had not previously been identified or subpoenaed prevented Defendant from properly exercising her due process rights. However, Defendant cites no authority for this proposition as required under Rule 28 of the North Carolina Rules of Appellate Procedure, and, therefore, we need not address it.

was *ex parte* and prior communication by the trial court with this witness." We find this allegation to be completely without merit. Ms. Tyson was present in the courtroom for at least a portion of the hearing before she testified. In fact, during his testimony, Mr. Amini identified Ms. Tyson as his assistant and indicated she was present and available to testify that she faxed the Sisk complaint to Ms. Hunter. Ms. Tyson's first name, Ann, was listed on Plaintiff's exhibit 29, which was tendered but excluded from evidence before Ms. Tyson was called. Therefore, Ms. Tyson's identity and presence was not a secret to the panel and any allegation the Commission conducted *ex parte* communications with her because the Chair referred to her by full name is baseless.

## B. Failure to Exercise Due Diligence Determination

[2] Ms. Hunter next argues the Commission committed reversible error and error as a matter of law in determining she failed to exercise due diligence in the representation of two client matters in violation of Rule 1.3 of the Revised Rules of Professional Conduct.

### 1. Standard of Review

Judicial review of a disciplinary order is limited to "matters of law or legal inference." N.C. Gen. Stat. § 84-28(h) (2009). In examining the record, the reviewing court applies the whole record test, which requires this Court to consider the evidence that supports the Commission's findings and "also take into account the contradictory evidence or evidence from which conflicting inferences can be drawn." *State Bar v. DuMont*, 304 N.C. 627, 643, 286 S.E.2d 89, 98 (1982). "Under the whole record test there must be substantial evidence to support the findings, conclusions[,] and result." *Id.* at 643, 286 S.E.2d at 98-99. "The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion." *Id.* However, the mere presence of contradictory evidence does not eviscerate challenged findings, and the reviewing court may not substitute its judgment for that of the committee. *See State Bar v. Leonard*, 178 N.C. App. 432, 439, 632 S.E.2d 183, 187 (2006), *disc. review denied*, 361 N.C. 220, 641 S.E.2d 693 (2007).

Our Supreme Court has set forth a three-step process to determine "if the lower body's decision has a 'rational basis in the evidence.' " *State Bar v. Talford*, 356 N.C. 626, 634, 576 S.E.2d 305, 311 (2003) (citation omitted). "(1) Is there adequate evidence to support the order's expressed finding(s) of fact? (2) Do the order's expressed finding(s) of fact adequately support the order's subsequent conclusion(s) of law? and (3) Do the expressed findings and/or conclusions

adequately support the lower body's ultimate decision?" *Id.* The Court also requires that the evidence used by the Commission in making its findings "rise to the standard of 'clear[, cogent,] and convincing.' " *Id.* at 632, 576 S.E.2d at 310 (citation omitted) (alteration in original).

Here, because Ms. Hunter did not challenge (and in fact stipulated to most of) the Commission's findings of fact, these facts are binding on appeal. *See State Bar v. Key*, 189 N.C. App 80, 87, 658 S.E.2d 493, 498 (2008). Accordingly, we review the record on appeal to ensure the Commission's conclusions of law are supported by its findings of fact, and ultimately support its determination that Ms. Hunter failed to act with due diligence.

2.  Lack of Due Diligence in the Amini and Wilson Lawsuits

With regard to the Amini lawsuit, the evidence shows Ms. Hunter did not act with reasonable diligence in serving process on Mr. Sisk and CMA. Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client." N.C. Rev. R. Prof. Conduct 1.3 (2005). "Due diligence dictates that [a lawyer] use all resources reasonably available to her in attempting to locate defendants." *Fountain v. Patrick*, 44 N.C. App. 584, 587, 261 S.E.2d 514, 516 (1980). However, it does not require a party to explore every possibility of ascertaining the location of the defendants. *Jones v. Wallis*, ___ N.C. App. ___, ___, 712 S.E.2d 180, 184 (2011).

Here, Ms. Hunter made several mistakes with regard to serving the defendants in the Amini matter, Mr. Sisk and CMA. First, she improperly attempted service through a private process server instead of the county's sheriff.

> Service must generally be carried out by the sheriff of the county where service is to occur. While the clerk of the issuing court may appoint an alternative person to carry out service, that '[c]lerk is not required or authorized to appoint a private process server as long as the sheriff is not careless in executing process.'

*B. Kelley Enters., Inc. v. Vitacost.com, Inc.*, ___ N.C. App. ___, ___, 710 S.E.2d 334, 339 (2011) (citation omitted); *see also* N.C. Gen. Stat. § 1A Rule 4(h) (2009). Here, there is no evidence indicating the Wake County Clerk of Court appointed the process server Ms. Hunter used in the Amini matter, nor is there any evidence that such an appointment would have been justified by neglect of the sheriff, especially when there is no indication Ms. Hunter ever contacted the sheriff to effect service.

N.C. STATE BAR v. HUNTER

[217 N.C. App. 216 (2011)]

The evidence further shows Ms. Hunter failed to use reasonable diligence in locating a valid address for Mr. Sisk and CMA. In attempting to serve the defendants, Ms. Hunter testified she relied on the name listed on the claim of lien: CMA. However, Ms. Hunter admitted at the disciplinary hearing that she sued the wrong party in the Amini matter. The proper party was Carter Management Services ("CMS"); CMA did not even exist. Thus, at the time she was attempting to serve the defendants in the Amini matter, Ms. Hunter could not find "CMA" in the Secretary of State's online database. She testified that a search of "Carter" resulted in over 500 hits. However, if Ms. Hunter had searched for "Carter Management," she would have found two results, one of which was the entity at issue.

Moreover, during the pendency of the Amini matter, Ms. Hunter represented Mr. Amini in several other suits, including one in which Mr. Amini was sued by CMS in Mecklenburg County. Ms. Hunter actually filed an answer to CMS's complaint in Mecklenburg County in a timely manner on 5 February 2007 and even had information regarding CMS sooner than that. However, she testified she did not "connect the dots" that it was CMS she should have sued and served in the Amini lawsuit and not CMA. She also testified she did not ask Mr. Amini anything about CMA beyond basic information when he initially asked her to file suit against the claim of lien. Had Ms. Hunter recognized that CMA was actually CMS, she would have been able to properly effect service.

Even if, however, Ms. Hunter could not locate a valid address to serve CMA, she should have obtained an endorsement or an alias or pluries summons to extend the life of the summons.

> When any defendant in a civil action is not served within the time allowed for service, the action may be continued in existence as to such defendant by either of the following methods of extension:
>
> (1) The plaintiff may secure an endorsement upon the original summons for an extension of time within which to complete service of process. Return of the summons so endorsed shall be in the same manner as the original process. Such endorsement may be secured within 90 days after the issuance of summons or the date of the last prior endorsement, or
>
> (2) The plaintiff may sue out an alias or pluries summons returnable in the same manner as the original process. Such alias or pluries summons may be sued out at any time within 90 days after

the date of issue of the last preceding summons in the chain of summonses or within 90 days of the last prior endorsement.

N.C. Gen. Stat. § 1A-1, Rule 4(d) (2009). Here, Ms. Hunter knowingly chose not to obtain an endorsement or an alias or pluries summons within ninety days of the issuance of the original summons. Accordingly, the Amini summons lapsed on 7 January 2007. Under Rule 4(e) of the Rules of Civil Procedure, a lawsuit is discontinued if the summons expires and no alias or pluries summons is obtained. N.C. Gen. Stat. § 1A, Rule 4(e) (2009). It may be revived when a new summons is issued, but the lawsuit is then deemed by law to have been filed on the date the new summons is issued. *Id.* Because of Ms. Hunter's delay in reviving the lawsuit, the Amini lawsuit was discontinued between 9 January 2007, the expiration date of the original summons, and 24 July 2007, when Ms. Hunter finally filed for renewal. As a result, the Aminis lost their position as first to file because Mr. Sisk filed his suit to perfect his claim of lien on 27 October 2006, well before the new commencement date of the Amini suit on 24 July 2007. Accordingly, due to Ms. Hunter's delay, the only way the Aminis could present their claims was as compulsory counterclaims to the Sisk lawsuit. *See* N.C. Gen. Stat. § 1A-1, Rule 13 (2009) (If a claim arises out of the same transaction or occurrence as an opposing party's first filed claim, the claim must be filed as a compulsory counterclaim.).

The Aminis were precluded, however, from filing their claims as compulsory counterclaims due to the default judgment order entered against them in the Sisk matter on 23 February 2007 for failure to file a responsive pleading. Had Ms. Hunter properly responded to the Sisk complaint as she told Mr. Amini and Ms. Tyson she would, the default judgment would not have been entered against them, and the Aminis would have at least been able to file their claims against Mr. Sisk as compulsory counterclaims. Though it is true Ms. Hunter testified she never received the Sisk complaint or knew of the Sisk lawsuit until Mr. Amini brought her the notice of default judgment, we find there is substantial evidence in the form of the testimony of Mr. Amini and Ms. Tyson to show Ms. Hunter did receive the Sisk complaint.

The evidence shows Ms. Hunter filed a Motion for Relief from Judgment on behalf of the Aminis, claiming the Aminis were never served with process. However, she did not argue in her motion that the claim of lien was defective due to it listing CMA instead of CMS nor did she argue the Sisk lawsuit should have been filed as a compulsory counterclaim to the Amini suit since the Amini suit was a prior pending action under Rule 13(a)(1) of the North Carolina Rules

N.C. STATE BAR v. HUNTER

[217 N.C. App. 216 (2011)]

of Civil Procedure. *See* N.C. Gen. Stat. § 1A-1, Rule 13 (2009) (If a claim arises out of the same transaction or occurrence as an opposing party's claim, it must be filed as a compulsory counterclaim unless the claim was the subject of a *prior* pending action.). Ms. Hunter's motion was denied, and the Aminis were foreclosed from presenting their claims. The Aminis appealed the denial of their motion but hired another lawyer, Ms. Rawls, to handle the appeal.

The evidence further shows that when Ms. Hunter finally did serve Mr. Sisk and CMS on 28 July 2007, Mr. Sisk moved to dismiss the case based on his default judgment in the Sisk lawsuit. Unsurprisingly, the trial court dismissed the Amini matter without prejudice, refusing to allow the Aminis to revive their discontinued suit as a counterclaim to the Sisk lawsuit without the setting aside of the default judgment against the Aminis. The court based its decision, in part, on the Aminis'—and thereby Ms. Hunter's—failure to serve Mr. Sisk and CMA within the time required under Rule 4(e) and failure to obtain a timely extension of the summons. This Court's decision affirming the trial court's denial of the Aminis' Motion for Relief from Judgment precluded the Aminis' ability to pursue their suit as a counterclaim. However, had Ms. Hunter diligently filed for extension of the original summons before its expiration or filed an answer to the Sisk complaint, the Aminis would have had their claims heard, and, instead, *Mr. Sisk* would have had to file his claims as compulsory counterclaims.

Ms. Hunter failed to show any regret for the position she left the Aminis in due to her inadequate representation. At the disciplinary hearing, Ms. Hunter testified she did not believe it was necessary to keep a summons alive when expiration of the statute of limitations was not at issue. She did not take any responsibility for the Aminis' situation due to her failure to extend the summons in the Amini matter or file an answer in the Sisk matter. Therefore, we hold the Commission relied on clear, cogent, and convincing evidence in determining Ms. Hunter failed to act with reasonable diligence in her representation of the Amini matter.

With regard to the Wilson lawsuit, clear, cogent, and convincing evidence was presented at the hearing to show Ms. Hunter failed to act with reasonable diligence when she did not file an answer in the Wilson matter, even when opposing counsel informed her she had not done so. Ms. Hunter filed a Motion for Relief and To Set Aside Entry of Default on behalf of Camron; however, in her motion, she did not take responsibility for her failure to timely file an answer to the

**N.C. STATE BAR v. HUNTER**

[217 N.C. App. 216 (2011)]

Wilson complaint. Court has held that "[t]he neglect of a litigant's attorney will not be imputed to [the litigant] unless the litigant is guilty of inexcusable neglect." *Dishman v. Dishman*, 37 N.C. App. 543, 547, 246 S.E.2d 819, 823 (1978). The proper focus for the trial court is on "what may be reasonably expected of a party in paying proper attention to his case under all the surrounding circumstances." *Id*. at 547, 246 S.E.2d at 822. "When a litigant has not properly prosecuted his case because of some reliance on his counsel, the excusability of the neglect on which relief is granted is that of the litigant, not of the attorney." *Id*. at 547, 246 S.E.2d at 822-23. " 'The neglect of the attorney, although inexcusable, may still be cause for relief.' " *Norton v. Sawyer*, 30 N.C. App. 420, 423, 227 S.E.2d 148, 151 (quoting *Moore v. Deal*, 239 N.C. 224, 227, 79 S.E.2d 507, 510 (1954)), *disc. review denied*, 291 N.C. 176, 229 S.E.2d 689 (1976). A litigant "who employs counsel and communicates the merits of his case may reasonably rely on his counsel and [his] counsel's negligence will not be imputed to him unless he has ample notice either of counsel's negligence or of a need for his own action." *Dishman*, 37 N.C. App. at 548, 246 S.E.2d at 823.

Here, had Ms. Hunter diligently ensured an answer to the Wilson lawsuit was filed, a default judgment would not have been entered against her client. Ms. Hunter claims she relied on her staff's assurances that an answer had been filed, yet she did not verify those assurances. As an attorney, Ms. Hunter, and not her staff, is responsible for filing an answer in her clients' matters. Most importantly, Mr. Amini was not at fault for Ms. Hunter's failure to file an answer in the Wilson lawsuit and should not have suffered because of her mistake. It is true Ms. Hunter admitted fault at the disciplinary hearing and paid the obligation owed by DI-RA, LLC d/b/a Camron. However, had Ms. Hunter admitted fault in her Motion for Relief from Judgment, the trial court likely would have granted Ms. Hunter's motion because the neglect of a litigant's attorney will generally not be imputed to the litigant. Such an admission would likely have saved her client from having a default judgment entered against it. Therefore, we hold the Commission relied on clear, cogent, and convincing evidence in deter-mining Ms. Hunter failed to act with reasonable diligence in her representation of the Wilson matter.

In conclusion, we note the importance of diligence in represent-ing clients:

Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected

by the passage of time or the change of conditions . . . . Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness.

N.C. Rev. R. Prof. Conduct 1.3, Cmt. 3 (2010). Because of Ms. Hunter's inaction, her clients were unable to present claims and defenses to the court in the Amini and Wilson matters. We note that any one of Ms. Hunter's negligent acts, standing alone, would generally not have been sufficient to constitute a failure to act with reasonable diligence. *See* N.C. Rev. R. Prof. Conduct 1.3, Cmt. 6 (2010) ("Generally speaking, a single instance of unaggravated negligence does not warrant discipline."). "Conduct that may constitute professional malpractice does not necessarily constitute a violation of the ethical duty to represent a client diligently." *Id.* However, we hold Ms. Hunter's actions, together, as discussed above, constitute Ms. Hunter's failure to act with reasonable diligence in violation of Rule 1.3. Accordingly, we hold the trial court's conclusions of law support its ultimate determination that Ms. Hunter failed to exercise due diligence in her representation in the Amini and Wilson matters.

## IV. Conclusion

For the foregoing reasons, the order of the Commission is

Affirmed.

Judges BEASLEY and THIGPEN concur.