NO. COA13-1140

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

THE NORTH CAROLINA STATE BAR,
    Plaintiff,

    v.                              Disciplinary Hearing Commission
                                    of the North Carolina State Bar
                                    No. 12 DHC 38
GEOFFREY H. SIMMONS, Attorney,
    Defendant.


Appeal by defendant from order of discipline entered 19 April 2013 by the Disciplinary Hearing Commission of the North Carolina State Bar.  Heard in the Court of Appeals 17 February 2014.

> *The North Carolina State Bar, by Deputy Counsel David R. Johnson and Counsel Katherine Jean, for plaintiff-appellee.*
>
> *Poyner Spruill LLP, by M. Jillian DeCamp and Carrie V. McMillan, for defendant-appellant.*


HUNTER, JR., Robert N., Judge.


Geoffrey H. Simmons ("Defendant") appeals from a final order of the Disciplinary Hearing Commission ("DHC") disbarring him from the practice of law for embezzling client funds. Defendant contends (1) that there was insufficient evidence before the DHC that he intended to embezzle client funds, (2) that the DHC could not impose discipline based on embezzlement

without a criminal conviction, and (3) that the DHC's order failed to conform to the requirements of *N.C. State Bar v. Talford*, 356 N.C. 626, 576 S.E.2d 305 (2003), for disbarring attorneys. For the following reasons, we disagree and affirm the DHC's order.

## I.    Factual & Procedural History

Defendant was licensed to practice law by the North Carolina State Bar in 1977 and practiced law for over thirty years. Defendant's career was, in many respects, a decorated one. After graduating from Duke University School of Law, Defendant worked for the General Assembly and in the administration of former Governor James B. Hunt. Defendant engaged in significant pro bono work during his career. In 1987, the North Carolina Bar Association named Defendant the Pro Bono Lawyer of the year. In 1990, Defendant was elected the first black President of the Wake County Bar Association and the Tenth Judicial District Bar. During his career, Defendant established a reputation for good character, veracity, and truthfulness in both social and legal communities. Notwithstanding Defendant's accomplishments, however, the allegations in the State Bar's complaint against Defendant are

serious, and are based on the following facts gleaned from the record.

From 1985 until his disbarment, Defendant was a solo-practitioner focusing on criminal and personal injury work, with an office in Raleigh. The record reflects that Defendant had an assistant on his payroll, who performed paralegal work. During the course of his law practice, Defendant maintained a trust account on behalf of his clients.

In March 2012, a medical provider filed a complaint with the State Bar alleging that Defendant had not paid one of his client's bills. A subsequent audit of Defendant's trust account by the State Bar revealed disbursements made by Defendant from 2010–2012 to himself and his assistant for which Defendant had no supporting documentation. The investigation also revealed instances of insufficient client funds to cover disbursements to those clients and their medical providers.

As a result of the investigation, the State Bar filed a complaint alleging, *inter alia*, misappropriation of entrusted funds with respect to eight of Defendant's clients. On 15 March 2013, the DHC held a hearing to determine if Defendant's alleged misconduct warranted disciplinary action. At the hearing, documentary exhibits were received into evidence and testimony

was heard from, among others, the State Bar's investigator, two of the eight clients who were named in the complaint, and Defendant.

The State Bar's investigator testified concerning Defendant's trust account activity and bookkeeping for the eight clients. His testimony, along with accompanying documentary exhibits, established undocumented disbursements to Defendant and Defendant's assistant, as well as occasions where disbursements were made from insufficient client funds. In those instances where Defendant disbursed funds from the trust account to himself and/or his assistant, a pattern was observed. Once Defendant received personal injury settlement proceeds on behalf of a client, Defendant deposited those proceeds into his trust account. Afterwards, Defendant withdrew his one-third contingency fee and paid the client a one-third share. The remaining funds were intended to satisfy medical liens and obligations. However, in addition to paying on the medical liens, Defendant wrote additional checks to himself and his assistant in varying amounts between $200 and $600. As a result, some medical providers with statutory liens against client funds were not paid in full for their share of the recovery. To cover shortfalls, Defendant used trust account

funds belonging to others and not identified to the client to cover checks written to that client or the client's medical providers.

In his defense, Defendant admitted to poor record keeping practices but denied misappropriating client funds. Defendant attributed the undocumented disbursements to expenses, additional legal work, accounting mistakes, and, in some cases, Defendant claimed the disbursements were at the behest of his clients. Both clients who testified at the hearing indicated that Defendant did not tell them about any additional disbursements made from their account. One of the clients, after being contacted by the State Bar, filed a Client Security Fund Application against Defendant claiming he took an additional disbursement dishonestly.[1]

On 19 April 2013, the DHC entered a written order of discipline. The order's findings of fact recite the transactions made for each of the eight clients, including the disbursements at issue. After reciting each undocumented disbursement made to Defendant and his assistant, the DHC found that Defendant and his assistant were "not entitled" to the additional disbursements and concluded that Defendant

---

[1] Defendant reimbursed the client during the pendency of the State Bar's investigation.

"misappropriated" these funds. The DHC's order also concludes that Defendant misappropriated each disbursement made from insufficient funds and each disbursement made from funds owed to medical providers with statutory liens. Furthermore, the order states:

> 91. The misappropriations . . . were committed knowingly and willfully.
>
> 92. The misappropriations . . . were not authorized by the parties for whom [Defendant] was holding the funds in trust.
>
> 93. The Hearing Panel specifically finds that [Defendant's] testimony at this hearing was not credible. [Defendant's] testimony was inconsistent with other testimony of his at the hearing and at his deposition. [Defendant's] testimony was also inconsistent with the documentation and with the testimony given by the other witnesses at the hearing.

Based on its findings, the DHC concluded, *inter alia*, that Defendant "committed the crime of embezzlement" and was subject to discipline pursuant to N.C. Gen. Stat. § 84-28(b)(2) (2013). After making additional findings of fact and conclusions of law regarding discipline, the DHC ordered Defendant disbarred from the practice of law. Defendant filed timely notice of appeal.

## II. Jurisdiction

"There shall be an appeal of right by either party from any final order of the Disciplinary Hearing Commission to the North

Carolina Court of Appeals." N.C. Gen. Stat. § 84-28(h) (2013); *accord* N.C. Gen. Stat. § 7A-29(a) (2013). Thus, Defendant's appeal is properly before this Court.

### III. Analysis

Defendant's appeal presents three questions for our review: (1) whether there was sufficient evidence upon which the DHC could find that Defendant intended to embezzle client funds; (2) whether the DHC could impose discipline based on the embezzlement of client funds without a criminal conviction; and (3) whether the DHC's order conforms to the requirements of *Talford* for imposing disbarment as a sanction for attorney misconduct. We address each in turn.

### A. Sufficiency of the Evidence Regarding Intent

Defendant challenges the sufficiency of the evidence regarding his intent to embezzle client funds. Specifically, Defendant contends that the State Bar failed to present "clear, cogent, and convincing" evidence that Defendant knowingly and willfully misappropriated or embezzled client funds.

By statute, our review of the DHC's disciplinary order is limited to "matters of law or legal inference." N.C. Gen. Stat. § 84-28(h). In examining the record, we apply the whole record test. *N.C. State Bar v. Hunter*, ___ N.C. App. ___, ___, 719

S.E.2d 182, 188 (2011). "Under the whole record test there must be substantial evidence to support the findings, conclusions, and result. The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation marks, citations, and alteration omitted); *see also Talford*, 356 N.C. at 632, 576 S.E.2d at 309–10 (describing this task as determining whether the DHC's decision "has a rational basis in the evidence" (quotation marks and citations omitted)). In engaging in this inquiry, we consider the evidence supporting the DHC's findings as well as evidence tending to contradict those findings. *Hunter*, ___ N.C. App. at ___, 719 S.E.2d at 188. However, "the mere presence of contradictory evidence does not eviscerate challenged findings, and [this Court] may not substitute its judgment for that of the [DHC]." *Id.* Moreover, the evidence used by the DHC to support its findings must rise to the standard of "clear, cogent, and convincing." *Talford*, 356 N.C. at 632, 576 S.E.2d at 310.

In *Talford*, our Supreme Court set forth a three-step process to determine if the DHC's decision has a rational basis in the evidence:

> (1) Is there adequate evidence to support the order's expressed finding(s) of fact?

> (2) Do the order's expressed finding(s) of fact adequately support the order's subsequent conclusion(s) of law? and

> (3) Do the expressed findings and/or conclusions adequately support the lower body's ultimate decision?

*Id.* at 634, 576 S.E.2d at 311. This three-step process "must be applied separately" to both the adjudicatory phase of the DHC's proceedings ("Did the defendant commit the offense or misconduct?") and to the dispositional phase of the DHC's proceedings ("What is the appropriate sanction for committing the offense or misconduct?"). *Id.*

With our standard of review precisely defined, we now consider Defendant's first argument on appeal.

As an initial matter, we note that in Defendant's principal brief to this Court, no specific findings of fact were referenced as being in error. Nevertheless, we agree with Defendant that assignments of error to specific findings of fact are not required to properly challenge those findings. "The scope of review on appeal is limited to issues so presented in the several briefs." N.C. R. App. P. 28(a). Accordingly, because Defendant's arguments concerning the sufficiency of the evidence address, in substance, the DHC's finding that Defendant "knowingly and willfully" misappropriated or embezzled client

funds, we review the DHC's findings related to Defendant's intent.

The crime of embezzlement is defined by N.C. Gen. Stat. § 14-90 (2013) and requires a showing of the following four elements:

> (1) the defendant was the agent or fiduciary of the complainant;
>
> (2) pursuant to the terms of the defendant's engagement, he was to receive property of the complainant;
>
> (3) he did receive such property in the course of his engagement; and
>
> (4) *knowing the property was not his*, the defendant either converted it to his own use or fraudulently misapplied it.

*State v. Tucker*, ___ N.C. App. ___, ___, 743 S.E.2d 55, 59 (2013) (emphasis added). "The intent necessary to convict on a charge of embezzlement is an intent of the agent to embezzle or otherwise willfully and corruptly use or misapply the property of the principal for purposes for which the property is not held." *State v. Britt*, 87 N.C. App. 152, 153, 360 S.E.2d 291, 292 (1987). "Such intent may be shown by direct evidence, or by evidence of facts and circumstances from which it may reasonably be inferred." *State v. McLean*, 209 N.C. 38, 40, 182 S.E. 700, 702 (1935); *N.C. State Bar v. Ethridge*, 188 N.C. App. 653, 660,

657 S.E.2d 378, 383 (2008). "In addition, a person who deposits funds into a personal account knowing that the money belongs to others is sufficient evidence to show embezzlement." *Ethridge*, 188 N.C. App. at 660, 657 S.E.2d at 383. Furthermore, "[t]he intent element for misappropriation is essentially the same as the crime of embezzlement." *Id.* Indeed, misappropriation is a synonym for embezzlement. *Id.* Thus, we examine the whole record to determine whether there is "substantial" or "clear, cogent, and convincing" evidence to support the finding that Defendant knowingly and willfully misappropriated client funds.

Our review of the record in this case reveals substantial evidence from which Defendant's intent to misappropriate client funds can be reasonably inferred.

First, Defendant knew the correct way to document and maintain his trust account yet failed to do so. Defendant testified that he had previously been on the Trust Account Committee of the State Bar, had attended Continuing Legal Education workshops regarding trust accounting, and had been audited by the State Bar on prior occasions.[2]

---

[2] The State Bar provides resources and support to ensure that lawyers manage trusts accounts properly. The *Lawyer's Trust Account Handbook* examines the Rules of Professional Conduct pertinent to trust accounting and contains best practices for North Carolina attorneys. *See Lawyer's Trust Account Handbook*,

Second, Defendant made numerous disbursements from his trust account for which he had no supporting documentation.[3]

Third, both clients who testified at the hearing indicated that Defendant did not tell them about taking an additional disbursement from their account, and the clients were never informed concerning the amount of the disbursement or its purpose.

Fourth, one of these clients filed a Client Security Fund Application with the State Bar alleging that Defendant took an additional disbursement from his account dishonestly. Testimony revealed that Defendant reimbursed the client in question after learning that the client was going to be deposed in the State Bar's investigation "so that [the client] would have good feelings towards [him]."

Fifth, the additional disbursements were often made when Defendant was in financial need.

---

The North Carolina State Bar (Revised May 2011), http://www.ncbar.com/PDFs/Trust%20Account%20Handbook.pdf.

[3] The *Lawyer's Trust Account Handbook* indicates that a client's file should contain documentation supporting disbursements and identifies poor bookkeeping as a means of concealing embezzlement of client funds. *Id.* at 48. As a best practice for bookkeeping, "[a] copy of the client's ledger card may be provided to the client as a written accounting of the receipt and disbursement of funds. When this is done, the client should sign and date the original to show that the client was given a written accounting of his or her funds . . . ." *Id.* at 30.

Sixth, Defendant's attribution of the additional disbursements to expenses, additional legal work, accounting mistakes, and compliance with client requests is inconsistent with the other record evidence. For example, for the first client named in the State Bar's complaint, Defendant took an additional disbursement of $250 on 12 March 2010. Defendant testified that this additional disbursement was for additional legal services, namely, drafting a complaint. However, the client testified that she was unaware of this additional fee and the memo line of the check indicated that the disbursement was for "Office Expenses Reimbursement."

Likewise, for the second client named in the State Bar's complaint, Defendant took an additional disbursement of $250 for himself and another $200 for his assistant on 14 and 19 January 2011, respectively. Defendant testified that his disbursement was for work on an unrelated criminal case the client asked Defendant to handle and that the disbursement to his assistant was made at the client's request. However, there was no evidence of the other criminal case in the record and the memo line on Defendant's disbursement check read "fee to collect MedPay." The memo line on the check to Defendant's assistant indicated that the check was for "office expenses."

As a final example, for the third client named in the State Bar's complaint, Defendant took an additional disbursement of $500 on 20 June 2011. Defendant testified that this disbursement was for travel expenses. Defendant also testified that the client consented to the payment. However, the client denied consenting to the payment and the memo line of the check indicates the additional disbursement was for "legal fees."

Based on the foregoing evidence, as well as the other record evidence presented to this Court, we hold that there was "substantial" or "clear, cogent, and convincing" evidence to support the DHC's finding that Defendant knowingly and willfully misappropriated client funds. While Defendant points to his own testimony to negate this inference of intent, the DHC found that Defendant's testimony was not credible based on its inconsistency with other evidence presented at the hearing. Our review has confirmed those inconsistencies. Accordingly, Defendant's argument regarding the sufficiency of the evidence, on balance, lacks credibility.

## B. The Absence of a Criminal Conviction

Defendant's second argument on appeal challenges the DHC's decision to discipline Defendant and impose disbarment as a sanction for Defendant's misconduct without a criminal

embezzlement conviction. Defendant contends that the State Bar's rules forbid the DHC from concluding that Defendant "committed" a felony without first being charged and convicted of a felony in criminal court.

Questions concerning the construction and interpretation of the State Bar's rules are questions of law that are reviewed *de novo* on appeal. *N.C. State Bar v. Brewer*, 183 N.C. App. 229, 233, 644 S.E.2d 573, 576 (2007). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quotation marks and citation omitted).

Here, the DHC's order concludes as a matter of law that "[Defendant] committed the crime of embezzlement." As a result of this conduct, the DHC concluded that Defendant was subject to discipline pursuant to N.C. Gen. Stat. § 84-28(b)(2), which provides for attorney discipline when there has been a "violation of the Rules of Professional Conduct adopted and promulgated by the [State Bar] Council in effect at the time of the act." One of those rules, found to have been violated here, states "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's

honesty, trustworthiness or fitness as a lawyer in other respects." N.C. R. Prof'l Conduct 8.4(b). The official commentary to the rule states:

> The purpose of professional discipline for misconduct is not punishment, but to protect the public, the courts, and the legal profession. Lawyer discipline affects only the lawyer's license to practice law. It does not result in incarceration. For this reason, to establish a violation of paragraph (b), the burden of proof is the same as for any other violation of the Rules of Professional Conduct: it must be shown by clear, cogent, and convincing evidence that the lawyer committed a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer. Conviction of a crime is conclusive evidence that the lawyer committed a criminal act although, to establish a violation of paragraph (b), it must be shown that the criminal act reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer. *If it is established by clear, cogent, and convincing evidence that a lawyer committed a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, the lawyer may be disciplined for a violation of paragraph (b) although the lawyer is never prosecuted or is acquitted or pardoned for the underlying criminal act.*

*Id.* cmt. 3; *see also N.C. State Bar v. Rush*, 121 N.C. App. 488, 490, 466 S.E.2d 340, 341–42 (1996) ("The rule does not require a conviction, only that a criminal act be committed. . . .

Therefore, conviction of a crime is not a necessary element in a disciplinary proceeding.").

Defendant does not call our attention to this rule, rather, Defendant cites 27 N.C. Admin. Code 1B.0114(w)(2)(D) (2012) to support his claim that a criminal conviction is required. That rule requires the DHC to consider disbarment as a possible sanction if the defendant is found to engage in the "commission of a felony." *Id.* Defendant argues that "the plain language of the State Bar's Rule contemplates a felony conviction." However, we cannot agree with Defendant's interpretation given the fact that the rule uses "commission" rather than "conviction" and given the clear mandate found in the State Bar's commentary and our caselaw interpreting N.C. R. Prof'l Conduct 8.4(b). The rationale for not requiring a criminal conviction under N.C. R. Prof'l Conduct 8.4(b) is equally persuasive when interpreting 27 N.C. Admin. Code 1B.0114(w)(2)(D). Thus, because clear, cogent, and convincing evidence supports the DHC's conclusion that Defendant committed the crime of embezzlement in violation of N.C. R. Prof'l Conduct 8.4(b), the DHC was required to consider disbarment as a possible sanction pursuant to 27 N.C. Admin. Code

1B.0114(w)(2)(D).[4]   Defendant's second argument on appeal is without merit.

## C. The DHC's Order and *Talford*

Defendant's third argument on appeal is that the DHC's order failed to conform to the requirements of *Talford* for imposing disbarment as a sanction for attorney misconduct.

In *Talford*, our Supreme Court held that

> in order to merit the imposition of "suspension" or "disbarment," there must be a clear showing of how the attorney's actions resulted in significant harm or potential significant harm to [a client, the administration of justice, the profession, or members of the public], *and* there must be a clear showing of why "suspension" and "disbarment" are the only sanction options that can adequately serve to protect the public from future transgressions by the attorney in question.

*Talford*, 356 N.C. at 638, 576 S.E.2d at 313.   "Thus, upon imposing a given sanction against an offending attorney, the DHC must provide support for its decision by including adequate and

---

[4] Notably, the DHC also considered disbarment as a possible sanction pursuant to 27 N.C. Admin. Code 1B.0114(w)(2)(C), which states that "[d]isbarment shall be considered where the defendant is found to engage in: . . . (C) misappropriation or conversion of assets of any kind to which the defendant or recipient is not entitled, whether from a client or any other source."   Like 27 N.C. Admin. Code 1B.0114(w)(2)(D), the plain language of this provision does not suggest that a criminal conviction is required.

specific findings that address these two key statutory considerations." *Id.*

Here, after concluding that Defendant's conduct warranted discipline in the adjudicative part of the order, the DHC reincorporated its previous findings of fact and made 16 additional findings of fact regarding discipline. Defendant has not challenged these additional findings with argument on appeal, we therefore consider them binding before this Court. *Hunter*, ___ N.C. App. at ___, 719 S.E.2d at 188-89. Moreover, because we have determined that the DHC's finding concerning Defendant's intent to misappropriate client funds is supported by substantial evidence, we consider that fact established as well.

With respect to the first inquiry, *i.e.*, whether the order clearly shows how Defendant's actions resulted in significant harm or potential significant harm, we hold that the DHC's order is sufficient. Implicit in the DHC's conclusion that Defendant violated N.C. R. Prof'l Conduct 8.4(b) and (c) "is a determination that his misconduct poses a *significant* potential harm to clients." *N.C. State Bar v. Leonard*, 178 N.C. App. 432, 446, 632 S.E.2d 183, 191 (2006). Furthermore, we find the

following findings of fact in the DHC's disciplinary order compelling:

2. Defendant put his own personal interests ahead of his clients' interests.

. . . .

7. Defendant, by engaging in conduct involving misappropriation, misrepresentation and deceit over a number of years and by making false statements about his conduct, has shown himself to be untrustworthy.

8. Defendant, through his misappropriation, misrepresentation, and deceit, has caused harm to the standing of the legal profession, by undermining trust and confidence in lawyers and the legal system.

9. Defendant's misappropriation has caused significant harm to his clients and to third parties, namely the medical providers of his clients.

10. Defendant misappropriated funds for his own benefit that should have been used for the benefit of his clients, either by payment to the client or payment to the client's medical provider(s).

. . . .

13. . . . [Defendant] has not otherwise made any restitution for amounts misappropriated from clients. [Defendant] has not rectified the deficit in his trust account.

. . . .

15. Defendant has failed to acknowledge that he misappropriated client funds. Defendant

has provided explanations that are not consistent with the evidence received at the hearing in this matter.

Based on these and other findings, the DHC concluded:

3. Defendant caused significant harm to his clients by misappropriating their funds.

4. Defendant caused significant harm to medical providers who should have received payments from funds Defendant misappropriated.

5. Defendant has caused significant harm and potential harm to clients whose funds he should have in his trust account but for whom he has insufficient funds in his trust account.

6. Defendant's repeated commission of criminal acts reflecting adversely on his honesty, trustworthiness or fitness as a lawyer, his dishonest and deceitful conduct in placing false information on trust account checks to disguise his misappropriation, and the presentation of testimony that conflicted with the credible evidence received in the case caused significant harm to the legal profession by undermining trust and confidence in lawyers and the legal system.

We believe that in light of these findings and conclusions, the DHC's order clearly shows how Defendant's actions resulted in significant harm to his clients, the administration of justice, the profession, and members of the general public.

Likewise, with respect to the second inquiry, *i.e.*, whether the order contains a clear showing of why disbarment is the only

sanction option that can adequately serve to protect the public, we hold that the DHC's order is sufficient. In addition to considering and reciting all applicable factors relevant to attorney discipline found in 27 N.C. Admin. Code 1B.0114(w)(1), (2), and (3), the DHC's order stated:

> 7. The Hearing Panel has considered lesser alternatives and finds that disbarment is the only sanction that can adequately protect the public. An attorney's duty to preserve funds entrusted to the attorney is one of the most sacred that an attorney undertakes. The attorney should never violate that duty of trust.
>
> 8. The Hearing Panel considered lesser alternatives and finds that suspension of Defendant's license or a public censure, reprimand, or admonition would not be sufficient discipline because of the gravity of the actual and potential harm to his clients, the public, and the legal profession caused by Defendant's conduct, and the threat of potential significant harm Defendant poses to the public. The Hearing Panel has considered the evidence of Defendant's good character and pro bono service. However, given the repeated acts of dishonesty, misrepresentation, and deceit by [Defendant] established by the evidence presented at hearing and the significant harm and potential harm caused by [Defendant] established by the evidence . . . , the evidence of Defendant's good character and pro bono service does not warrant imposition of a lesser discipline.
>
> 9. The Hearing Panel has considered all lesser sanctions and finds that discipline short of disbarment would not adequately

protect the public for the following reasons:

a. Defendant engaged in misconduct constituting felonies and violations of the trust of his clients and the public;

b. Entry of an order imposing less serious discipline would fail to acknowledge the seriousness of the offenses Defendant committed and would send the wrong message to attorneys and the public regarding the conduct expected of members of the Bar of this State[.]

We believe these entries clearly establish that the DHC considered all lesser sanctions and explain why the DHC felt disbarment was the only adequate sanction in this case. Accordingly, we hold that the DHC's ultimate decision to disbar Defendant has a rational basis in the evidence and is consistent with our Supreme Court's decision in *Talford*.

## IV. Conclusion

For the foregoing reasons, we affirm the order of discipline disbarring Defendant from the practice of law.

AFFIRMED.

Chief Judge MARTIN and Judge ELMORE concur.